95 N.J. Super. 401 (1967)
231 A.2d 380
TOWNSHIP OF BRICK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, CHARLES C. GASKILL, WALTER J. McGEE, AGNES M. DECKER, AND ROY H. ISAACS, PLAINTIFFS-RESPONDENTS,
v.
WILLIAM SPIVAK, RONALD W. JONES, CHARLES H. MURDTER, AND ALFRED L. BROGAN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 5, 1967.
Decided June 12, 1967.
*403 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Harold A. Schuman argued the cause for appellants (Messrs. Haines, Schuman & Butz, attorneys).
Mr. Ellsworth J. Sterner argued the cause for respondents.
The opinion of the court was delivered by KILKENNY, J.A.D.
Township of Brick and the four individual plaintiffs, who had been among the 26 candidates running for the seven councilman-at-large seats at the regular municipal election on May 9, 1967 and who had placed 8th, 9th, 10th and 11th in the balloting, brought a declaratory judgment action in the Law Division and thereby sought an adjudication that there must be a run-off election under N.J.S.A. 40:69A-160 and 161 for four of the seven council seats for which none of the candidates had received a majority vote. Defendants, who had also been candidates and who had placed 4th, 5th, 6th and 7th in the balloting, but had not obtained at least 3,291 votes to give them a majority, contended that they should be declared elected, notwithstanding their lack of a majority, because the three highest candidates had obtained a majority.
The matter was heard by Judge Martino and he entered a judgment on June 5, 1967, in which he adjudged:
(1) N.J.S.A. 40:69A-160 requires that in an election of councilmen-at-large where seven candidates are to be elected all seven such candidates must receive a majority of the votes cast.
(2) A run-off election shall be held on June 13, 1967 as required by N.J.S.A. 40:69A-161.

*404 (3) The eight candidates individually named as parties in this action shall be the candidates for the office of councilmen-at-large at such run-off election and the four candidates who receive the greatest number of votes at such run-off election shall be elected to the office of councilmen-at-large.
Defendants appeal from this judgment. We affirm.
Township of Brick adopted Mayor-Council Plan B, N.J.S.A. 40:69A-49 et seq., under the Optional Municipal Charters Act, at the 1966 general election and provided for the election of seven councilmen-at-large. N.J.S.A. 40:69A-52 provides under Plan B for a council of five members, unless pursuant to the authority granted under sections 40:69A-13 and 19 the municipality chooses to be governed by a council of seven or nine members. The voters approved a seven-member council and they were to be elected at large.
N.J.S.A. 40:69A-160, so far as pertinent herein, provides:
"At the regular municipal election in any municipality which has adopted articles 4 or 5, or 9 through 12, inclusive, of this act [Brick Township adopted article 4], the candidates receiving the greatest number and a majority of the votes cast shall be elected; provided, however, that if:
(a) five councilmen at large are to be elected and 2 or more candidates for said office receive a majority of the votes cast the 5 candidates receiving the greatest number of votes shall be elected; * * *." (Emphasis added)
The proviso considers alternate situations where four, three or two councilmen at large are to be elected. In the case of four to be elected, if 2 or more candidates receive a majority, the 4 candidates receiving the greatest number of votes shall be elected. In the case of three or two councilmen at large to be elected, if 1 or more candidates, receive a majority, the 3 or the 2 candidates, respectively, receiving the greatest number of votes shall be elected.
*405 Significantly, however, no such similar pattern for an avoidance of a run-off election if less than all the candidates receive a majority has been expressed in the statute where seven or nine councilmen at large are to be elected. Defendants argue that we should imply that the legislative intent must have been to apply a similar formula where seven or nine councilmen at large are to be elected and that the failure to so provide was due to inadvertence. They would have us amend the statute by judicial decree or interpretation and rule that so long as 3 candidates for councilmen at large received a majority vote the seven candidates receiving the greatest number of votes should be declared elected.
It would be purely speculative on anyone's part to say that such was the legislative intent and that inadvertence, rather than deliberate action, induced the omision from the proviso of a similar formula where seven or nine councilmen at large are to be elected. If this were fresh legislation but recently passed, a stronger case could be made of the argument that there was an inadvertent omission. But these sections were adopted several years ago and have remained unchanged. Contention is made that the original legislation provided for only five councilmen at large and the provision for seven or nine came by way of amendment. From this the argument is made that the Legislature simply forgot to make the necessary adjustment in the formula expressed in N.J.S.A. 40:69A-160.
There are two important factors which militate against this argument. First, the policy of the Faulkner Act has been in favor of requiring candidates to receive a majority vote in order to be elected and to subject candidates to a run-off election for a second choice by the voters when the majority has not been obtained. The rationale behind such an objective is seen in the instant situation where 26 candidates aspire for the seven councilman at large seats. To hold that so long as three attained a majority is sufficient to declare the seven with the greatest number of votes elected would enable four to represent the people on the council, even though they *406 may have received a relatively small vote. If one would increase the number of candidates the potentiality becomes even more obvious.
Secondly, even if we were to assume that there was an inadvertent legislative omission in N.J.S.A. 40:69A-160 to make the formula therein equally applicable where seven or nine councilmen at large are to be elected, the remedy lies with the Legislature and not with the courts. We should not assume the function of the Legislature and rewrite the law to include therein something which those charged with the legislative responsibility might have inserted if the matter had been called to their attention.
Defendants make the further argument that the law is unconstitutional if a run-off election may be avoided under the terms of N.J.S.A. 40:69A-160 where five or a lesser number of councilmen at large are to be elected, but not similarly avoided where seven or nine councilmen at large are to be elected. The difficulty with that argument is that the proviso for avoidance of the run-off runs counter to the fundamental notion of election by majority vote or a run-off election where candidates fail to obtain a majority vote. Thus, the invalidity, if any, would be in the proviso containing the exceptions to a run-off, rather than in the general requirement first expressed in the statute that "the candidates receiving the greatest number and a majority of the votes cast shall be elected * * *."
No other issues are properly before us, our consideration having been limited to the judgment under review.
The judgment is affirmed.
GOLDMANN, S.J.A.D. (dissenting).
At the general election of 1966 the voters of Brick Township adopted Mayor-Council Plan B of the Optional Municipal Charters Law (the Faulkner Act, N.J.S.A. 40:69A-1 et seq.), the council to consist of seven councilmen-at-large. A charter commission, duly elected pursuant to N.J.S.A. 40:69A-1 and 2, had so recommended in its report filed in accordance with N.J.S.A. *407 40:69A-10. It had specified a seven-member council, as permitted by N.J.S.A. 40:69A-13.
There were 26 candidates for the office of councilman-at-large at the municipal election held May 9, 1967. Only three candidates received a majority of the votes cast, as determined by the formula set out in the final sentence of N.J.S.A. 40:69A-160. Appellants were the next four highest, followed by the four respondents. The township clerk having requested an opinion, the township solicitor ruled that a run-off election was necessary because only three candidates had received a clear majority.
The township then filed an action for declaratory judgment, joining as parties the eight candidates who received the greatest number of votes, but not a majority vote, at the May 9 election. The township prayed for a declaration of the rights of the parties and to have the court construe the legislative intent of N.J.S.A. 40:69A-160 in the circumstances here present where only three candidates had obtained a majority vote. Following argument, the Law Division judge entered judgment declaring that (1) in the case of an election for seven councilmen-at-large, N.J.S.A. 40:69A-160 requires that seven candidates receive a majority vote; (2) a run-off election be held on June 13, 1967, and (3) the eight candidates individually named as parties to the action should be the candidates for election as councilmen-at-large at such election and that the four receiving the greatest number of votes be declared elected. This appeal followed.
The Faulkner Act was the result of the work done by the Commission on Municipal Government appointed pursuant to L. 1948, J.R. No. 1. In its final report of February 14, 1949, which included a draft of proposed legislation, the Commission proposed, in section 8-9, that any municipality adopting the so-called Strong Mayor Plan A (sections 3-1 to 21) or the Council-Manager Plan (sections 5-1 to 22)  under each of which plans the municipal council was to consist of five members  "the candidates receiving the greatest number and a majority of votes cast shall be elected to the *408 respective offices; provided, however, that if two or more candidates for the office of councilman receive a majority of the votes cast in the election, the five candidates receiving the greatest number of votes shall be elected." Section 8-10 of the Commission draft proposed that if in any municipal election a sufficient number of candidates did not receive a majority of the votes cast to elect the required number of councilmen, a run-off election be held on the fifth Tuesday next following. Candidates not elected at the first election, equal in number to twice those remaining to be elected and who received the greatest number of votes, were to be the candidates at the run-off election. Those receiving the greatest number of votes at the run-off election were to be declared elected to the office or offices to be filled.
The Commission draft was introduced as Assembly Bill No. 300 on March 7, 1949. In its amended form, this bill became chapter 210 of the Laws of 1950. One of the significant amendments to the bill was that relating to section 1-13, now N.J.S.A. 40:69A-13. It provided that if the charter commission recommended adoption of any of the optional forms of government set out in articles 4, 5, 6, 7, 8, 10, 11 or 12 of the act, "it may also specify that the municipal council shall consist of seven or nine members instead of five members as provided in said articles," or if it recommended adoption of any of the optional forms in articles 13, 14, 15 or 16, "it may also specify that the council shall consist of five or seven members instead of three members as provided in said articles." Section 1-13 of Assembly 300 had contained no such provision.
Article 4 deals with Mayor-Council Plan B, adopted by the voters of Brick Township. Assembly 300 originally proposed in section 4-3 that the council in such municipality shall consist of five members to be elected at large. This was amended in L. 1950, c 210, § 4-4, now N.J.S.A. 40:69A-52, to read that the council consist of five members, unless pursuant to the authority granted under sections 1-13 or 1-19 (N.J.S.A. 40:69A-13 and 19) the municipality was *409 to be governed by a council of seven or nine members, to be elected at large. Similar changes from the original proposal were, in conformity with the changed language of section 1-13, made in sections 5-5 (Mayor-Council Plan C, N.J.S.A. 40:69A-59), 6-5 (Mayor-Council Plan D, N.J.S.A. 40:69A-65), 7-4 (Mayor-Council Plan E, N.J.S.A. 40:69A-71), 8-5 (Mayor-Council Plan F, N.J.S.A. 40:69A-78), 10-3 (Council-Manager Plan B, N.J.S.A. 40:69A-101), 11-4 (Council-Manager Plan C, N.J.S.A. 40:69A-107), 12-4 (Council-Manager Plan D, N.J.S.A. 40:69A-112), 14-3 (Small Municipality Plan B, N.J.S.A. 40:69A-135) and 16-3 (Small Municipality Plan D, N.J.S.A. 40:69A-146). And see N.J.S.A. 40:69A-114.3 added by L. 1953, c. 254. Further, L. 1950, c 210 made the following changes in Assembly 300: sections 13-3 (Small Municipality Plan A, N.J.S.A. 40:69A-117) and 15-3 (Small Municipality Plan C, N.J.S.A. 40:69A-141) were amended to permit the election of four or six councilmen-at-large, instead of two, where the electorate so provided in adopting the optional plan.
Although the Legislature made extensive changes in the language of section 8-9 of Assembly Bill No. 300, in the manner about to be indicated (N.J.S.A. 40:69A-160), to provide for a situation where, in the case of a municipal council consisting of two, three, four or five councilmen-at-large, that number of candidates failed to obtain a majority of the votes cast, it made no similar provision where there were seven or nine councilmen to be elected. This was undoubtedly an oversight. There is no logic in holding that the Legislature deliberately intended not to provide for a situation where there was a seven or nine-man council. It had said that a charter commission could recommend a council of that size and that the voters could adopt such recommendation. It had specifically mentioned governing bodies of seven or nine councilmen-at-large in the several sections of the act referred to. I perceive nothing in reason that should stay our hand in filling the gap in N.J.S.A. 40:69A-160 when *410 the legislative purpose is so manifest. The Faulkner Act must be read as a whole; its provisions should not be read in isolation. The in pari materia principle applies.
The provisos of N.J.S.A. 40:69A-160 were written into Assembly 300 and appear in section 17-11 of L. 1950, c. 210, the original act. N.J.S.A. 40:69A-160 directs that candidates at large receiving the greatest number and the majority of the votes cast shall be elected, provided that if
(a) five are to be elected and two or more candidates receive a majority, the five highest candidates shall be declared elected, or
(b) Four are to be elected and two or more receive a majority, the four highest shall be elected, or
(c) Three are to be elected and one or more receive a majority, the three highest shall be elected, or
(d) Two are to be elected and one or more (sic) receive a majority, the two highest shall be elected.
The pattern is obvious. Run-off elections are to be avoided where (1) an odd number of councilmen are to be elected, and one less than the majority of that number receive a majority of the votes cast, and (2) an even number are to be elected, half that number receive a majority. The question that naturally suggests itself is, why should the odd-number exception not apply in the case of a seven- or nine-man council?
If it be suggested that the failure of N.J.S.A. 40:69A-160 to deal with a governing body of seven or nine councilmen-at-large reflects a possible legislative concern for the relation between population and the number of members who will constitute such a body, the answer is that no analysis of the Faulkner Act will support such a conclusion. The Legislature expressly provided that a municipal council of seven or nine is available to a small municipality if the charter commission so recommends and the electorate accepts the recommendation. On the other hand, the voters of a large municipality are privileged to adopt an optional plan with a governing body of only five councilmen-at-large.
*411 This court has dealt with the Faulkner Act on several occasions in the past. A fresh examination of the act in its entirety is productive of nothing which in good reason would support our now concluding that the indicated legislative omission in N.J.S.A. 40:69A-160 was anything other than inadvertent.
Although it may be argued that it is for the Legislature to fill the gap now existing in N.J.S.A. 40:69A-160, failure on the part of this court to interpolate a provision which will complete the legislative pattern could well result in an attack upon section 160 on constitutional grounds. The validity of a statute must be supported whenever possible. To say that there need not be a run-off election in the specific instances recited in the proviso of section 160, but that such an election must be held where seven or nine councilmen-at-large are to be elected, is to set up a discriminatory classification.
One need only recall chapter 24 of the Laws of 1956 wherein the Legislature provided that in a regular municipal election in any municipality which had adopted Mayor-Council Plan A (N.J.S.A. 40:69A-31 to 48) or Mayor-Council Plan D (N.J.S.A. 40:69A-61 to 67) of the Faulkner Act, the candidates receiving the greatest number of votes cast shall be elected to the respective offices. In Batistich v. Brennan, 88 N.J. Super. 84 (1965), we held such an attempt to except these municipalities from the majority vote and run-off provisions of the Faulkner Act unconstitutional as special legislation. We said there was no rational relation between the class created and the object of the law, in that there was no substantial difference in government, population or otherwise between Mayor-Council Plan A and Plan D municipalities, and the other municipalities in which run-offs were required. Cf. Gangemi v. Rosengard, 44 N.J. 166 (1965).
Failure to read the Faulkner Act as a unitary whole and its provisions as being in pari materia would result in a similar declaration of unconstitutionality. I am unwilling to take *412 that step in light of the obvious pattern and purpose of the act as concerns exemption from run-off elections.
For these reasons I respectfully dissent from the majority view.