249 N.J. Super. 290 (1991)
592 A.2d 313
A.R. CRISCUOLO AND ASSOCIATES, INC. DEFINED BENEFIT PENSION PLAN AND TRUST, PLAINTIFF-APPELLANT,
v.
N.J. DEPARTMENT OF ENVIRONMENTAL PROTECTION, CHRISTOPHER DAGGETT, COMMISSIONER; BUREAU OF FRESHWATER WETLANDS, ROBERT PIEL, JR., CHIEF, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1991.
Decided June 28, 1991.
*291 Before Judges KING, LONG and R.S. COHEN.
Peter Buchsbaum argued the cause for appellant (Hannoch Weisman, attorneys; Peter Buchsbaum, Edward McTiernan and David A. Larkin, on the briefs).
Helene P. Chudzik, Deputy Attorney General, argued the cause for respondent (Douglas S. Eakeley, Acting Attorney General, Attorney; John M. Van Dalen, Deputy Attorney General, of counsel; Helene P. Chudzik, on the brief).
The opinion of the court was delivered by LONG, J.A.D.
*292 Plaintiff, A.R. Criscuolo and Associates, Inc. Defined Benefit Pension Plan and Trust (Criscuolo) here challenges a decision of the New Jersey Department of Environmental Protection (DEP) granting it only a limited exemption from the provisions of the Freshwater Wetlands Protection Act (FWPA or the Act), N.J.S.A. 13:9B-1 to -30. Criscuolo contends that it is entitled to the statutory exemption prescribed by N.J.S.A. 13:9B-4d(3) in the FWPA for its proposed development, Willow Hill Square, based on its compliance with the conditions of a nationwide permit issued by the Army Corps of Engineers (Corps) pursuant to section 404 of the Clean Water Act of 1977 (Clean Water Act), 33 U.S.C.A. § 1344. 33 C.F.R. § 330.5 (1990). More particularly, Criscuolo argues that DEP erred in enacting N.J.A.C. 7:7A-2.7(g) which impermissibly narrows the plain language of the FWPA; that DEP improperly limited its exemption to the fill of .06 acres of wetlands instead of .83 acres, and that the agency wrongfully denied it an administrative hearing. We have carefully reviewed this record in light of the claims advanced by Criscuolo and have concluded that Criscuolo is wide of the mark in its interpretation of the statute and regulation but that it is on target in its contention that it was entitled to an exemption for the fill of .83 acres of wetlands. Thus, we reverse.

I
Criscuolo owns a tract of land in South Brunswick Township, Middlesex County, which consists in part of freshwater wetlands.[1] Criscuolo planned to subdivide the property into 64 lots, *293 and to construct a single family house on each. In furtherance of this plan, Criscuolo sought subdivision approval from the South Brunswick Planning Board. During the Planning Board's review of the project, a certified soil scientist/classifier was hired by Criscuolo to verify the wetlands mapping. He concluded that the wetlands line, as delineated by Criscuolo's engineer (Hudson) was essentially accurate and noted that while the line could have been adjusted in some areas, none of the adjustments was significant.
In May 1988, Criscuolo, through Hudson, requested of the Corps a statement that the project could proceed under a nationwide general permit pursuant to 33 C.F.R. § 330.5(a)(14). With the request were supporting documents, including maps depicting the extent and location of wetlands which would be filled so that a road crossing could be built. This request indicated that .06 acres of wetlands would be filled.
On October 12, 1988, the Corps confirmed that it received this request on May 10, 1988, and that the project qualified under a nationwide permit, Permit # 26 (33 C.F.R. § 330.5(a)(26)). Under the permit, Criscuolo was permitted to fill up to one acre of wetlands. The Corps' transmission noted that DEP was required to establish the extent of the affected wetlands and to insure that the project complied with the conditions of Nationwide Permit # 26 prior to construction.
After obtaining the Planning Board's approval for the subdivision, on December 9, 1988, Criscuolo, again through Hudson, submitted documents to DEP, including the map describing the project and sought a "letter of interpretation to establish whether portions of the subject property are located in a freshwater wetland" and "statement of concurrence that the *294 subject proposal can proceed as planned under existing Statewide General Permit Number 7:7A-9.2(a)6 and 7:7A-9.2(a)7."
On February 6, 1989, DEP responded by noting a discrepancy between the map depicting the affected wetlands submitted with the December 9, 1988 request and the field location of those wetlands, discovered during a site inspection of the project. Criscuolo was instructed to investigate the discrepancy and inform DEP of how it intended to proceed. DEP also requested copies of all documents sent to the Corps, in order to determine whether Criscuolo qualified for an exemption under the FWPA. DEP and Hudson's staff met and the erroneous map was corrected. As a result of the revisions, the area of wetlands proposed to be filled was amended to .83 acres. Criscuolo also adjusted the configuration of some of the proposed roads in the project to satisfy the Planning Board and to limit the impact on the wetlands as now identified. The Corps was again contacted to confirm that the project still qualified under Nationwide Permit # 26.
On June 5, 1989, the Corps confirmed that the revised proposal "continues to comply with the requirements of the nationwide general permit" and that Criscuolo could fill up to one acre of wetlands without further application. On June 30, 1989, Criscuolo requested from DEP an exemption from the FWPA, pursuant to N.J.S.A. 13:9B-4d(3), basing its request on the Corps' continuing approval of the project.
On September 25, 1989, DEP issued its decision granting Criscuolo an exemption from the Act limited to the affected wetlands as depicted on the original erroneous map (.06 acres). DEP did not grant an exemption for the additional affected wetlands as shown on the corrected map.
On October 24, 1989, Criscuolo requested that DEP either modify its September 25, 1989 limited exemption to include those areas of the project which continued to meet the conditions for a nationwide permit, i.e., the wetlands affected by the revised mapping of the project, or to grant Criscuolo an administrative *295 hearing to contest the limited exemption. DEP rejected both of these requests. The rationale for denying the administrative hearing was discussed in some detail. As to the exemption, DEP merely stated that the project "clearly does not fall within the class of exempted projects...." This appeal followed.

II
Freshwater wetlands play an important part in maintaining the integrity of the environment and the public's health and safety. As the Legislature noted in enacting the FWPA:
[F]reshwater wetlands protect and preserve drinking water supplies by serving to purify surface water and groundwater resources; that freshwater wetlands provide a natural means of flood and storm damage protection, and thereby prevent the loss of life and property through the absorption and storage of water during high runoff periods and the reduction of flood crests; that freshwater wetlands serve as a transition zone between dry land and water courses, thereby retarding soil erosion; that freshwater wetlands provide essential breeding, spawning, nesting, and wintering habitats for a major portion of the State's fish and wildlife, including migrating birds, endangered species, and commercially and recreationally important wildlife; and that freshwater wetlands maintain a critical baseflow to surface waters through the gradual release of stored flood waters and groundwater, particularly during drought periods. [N.J.S.A. 13:9B-2].
Prior to the enactment of the FWPA, wetlands were regulated piecemeal by various state agencies, by the federal Environmental Protection Agency (EPA) and the Corps under the Clean Water Act. Pursuant to 33 U.S.C.A. § 1344, a permit program, administered by the Corps, regulated the discharge of fill materials into wetlands. Among other things, the permit regulations specified two types of permits authorizing the fill of wetlands: an individual permit and a general permit. 33 C.F.R. §§ 323.2(g) and (h).
33 C.F.R. § 323.2(g) defines an individual permit as:
a Department of the Army authorization that is issued following a case-by-case evaluation of a specific project involving the proposed discharge(s) in accordance with the procedures of this part and 33 CFR Part 325 and a determination that the proposed discharge is in the public interest pursuant to 33 CFR Part 320. [Emphasis added].
*296 A nationwide or general permit is defined in 33 C.F.R. § 323.2(h) as:
a Department of the Army authorization that is issued on a nationwide or regional basis for a category or categories of activities when:
(1) Those activities are substantially similar in nature and cause only minimal individual and cumulative environmental impacts; or
(2) The general permit would result in avoiding unnecessary duplication of regulatory control exercised by another Federal, state, or local agency provided it has been determined that the environmental consequences of the action are individually and cumulatively minimal. (See 33 CFR 325.2(e) and 33 CFR Part 330.) [Emphasis added].
See also 33 C.F.R. § 330.1. Such a permit is actually a permit by regulation because it is the regulation itself which permits a particular activity without further review. 33 C.F.R. § 330.5(a) sets forth in detail those "activities" which are permitted under a nationwide permit. Generally, these are activities which have relatively insignificant impact on wetlands and involve discharges of dredged or fill material which will cause minimal adverse effects on the environment when performed separately and minimal cumulative effects overall. Riverside Irr. Dist. v. Andrews, 758 F.2d 508, 511 (10th Cir.1985). 33 C.F.R. § 330.5(a)(26) is the nationwide permit at issue here. It allows the filling of less than one acre of wetlands:
(a) Authorized activities. The following activities are hereby permitted provided they meet the conditions listed in paragraph (b) of this section and, where required, comply with the notification procedures, of § 330.7.
....
(26) Discharges of dredged or fill material into the waters listed in paragraphs (a)(26)(i) and (ii) of this section except those which cause the loss or substantial adverse modification of 10 acres or more of such waters of the United States, including wetlands. For discharges which cause the loss or substantial adverse modification of 1 to 10 acres of such waters, including wetlands, notification to the district engineer is required in accordance with § 330.7 of this Part. (Section 404).
(i) Non-tidal rivers, streams, and their lakes and impoundments, including adjacent wetlands, that are located above the headwaters.
(ii) Other non-tidal waters of the United States, including adjacent wetlands, that are not part of a surface tributary system to interstate waters or navigable waters of the United States (i.e. isolated waters).
With the FWPA, which was enacted on July 1, 1987 to be effective on July 1, 1988, the New Jersey Legislature addressed *297 the loss of thousands of acres of freshwater wetlands as a result of unfettered development throughout the State. The Act established a program of systematic review of wetlands, consolidated all regulatory programs affecting wetlands, N.J.S.A. 13:9B-5, and imposed permit and transition area requirements (see, e.g., N.J.S.A. 13:9B-9, -12, -16). The FWPA defines a regulated activity as any of the following: (1) the removal, excavation, disturbance or dredging of soil, sand, gravel, or aggregate material of any kind; (2) the drainage or disturbance of the water level or water table; (3) the dumping, discharging or filling with any materials; (4) the driving of pilings; (5) the placing of obstructions; and (6) the destruction of plant life which would alter the character of a freshwater wetland, including the cutting of trees. N.J.S.A. 13:9B-3.
Certain exemptions from the permit and transition area requirements of the FWPA were set forth, including the following:
Projects for which ... (3) permit applications have been approved by the U.S. Army Corps of Engineers prior to the effective date of this act, which projects would otherwise be subject to state regulation on or after the effective of this act, shall be governed only by the Federal Act, and shall not be subject to any additional or inconsistent substantive requirements of this act; provided, however, that upon the expiration of a permit issued pursuant to the Federal Act any application for renewal thereof shall be made to the appropriate regulatory agency. [N.J.S.A. 13:9B-4d].
To effectuate the legislative intent underlying N.J.S.A. 13:9B-4d, DEP enacted regulations in June 1988. 20 N.J.R. 1235 (June 6, 1988). The regulations set forth two distinct exemption provisions based on federal permit. N.J.A.C. 7:7A-2.7(d)3 exempts:

Projects for which permit applications have been approved and permits have been issued by the United States Army Corps of Engineers prior to July 1, 1988, for projects which would otherwise be subject to State regulation on or after July 1, 1988. Such projects shall be governed only by the Federal Act, and shall not be subject to any additional or inconsistent substantive requirements of the Act; provided, however, that upon the expiration of a permit issued pursuant to the Federal Act any application for a renewal thereof shall be made to the appropriate regulatory agency. [Emphasis added].
*298 In addition, an exemption from the FWPA based on a nationwide permit was also provided:

Activities authorized under United States Army Corps of Engineers Nationwide Permits prior to July 1, 1988 shall not require a freshwater wetlands permit from the department provided the property owner can demonstrate that a nationwide permit provided authorization for a particular site and use prior to July 1, 1988. [N.J.A.C. 7:7A-2.7(g) (emphasis added)].
These regulations track the federal scheme exactly and echo the federally-established distinction between permits. Thus, the exemption under an individual permit addresses a "project" while the exemption under a nationwide permit extends to a particular "activity."
Criscuolo argues that the language of N.J.A.C. 7:7A-2.7(g) impermissibly narrows the broad "project" exemption in the FWPA by limiting the exemption claimed under a nationwide permit to "activities." On the contrary, the DEP regulation is a most expansive view of the FWPA. Indeed, N.J.S.A. 13:9B-4d describes the exemption it provides as for "projects for which ... (3) permit applications have been approved by the U.S. Army Corps of Engineers...." [Emphasis added]. Under the federal scheme, this is a clear reference to an individual permit. Given this very specific description and the Legislature's recognition of the distinction between "projects" and "activities" in other sections of the Act (N.J.S.A. 13:9B-6), it is at least arguable that N.J.S.A. 13:9B-4d was meant solely to provide an exemption in a case in which an individual federal permit has issued for a "project" after a full case evaluation. Under such a reading, Criscuolo would have no claim whatsoever for an exemption.
Neither party, however, advances this argument and we are persuaded by DEP that the Legislature actually intended to exempt from the Act all applicants who had projects or activities which were well underway; who had spent substantial amounts of time, effort and money, and who had received federal approval either by way of an individual project permit or by qualifying under a nationwide activity permit by regulation. *299 In reaching this conclusion, we have looked, as we are entitled to do, beyond the specific terms of the Act to what we view as the DEP's correct statement of the statutory policy meant to be achieved. N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562, 384 A.2d 795 (1978). We likewise have recognized the deference due an administrative regulation in cases involving "the construction of a new statute by its implementing agency." Id. at 575, 384 A.2d 795; see In re Amendment of N.J.A.C. 8:31B-3.31 and N.J.A.C. 8:31B-3.51, 119 N.J. 531, 543-44, 575 A.2d 481 (1990). In our view, the regulation at issue reflects DEP's familiarity with the nuances of the federal scheme and a recognition that the Legislature intended a wholesale incorporation of that scheme into the exemption process. We thus hold that N.J.A.C. 7:7A-2.7(g), which provides an exemption for activities authorized under the nationwide permit, is a valid exercise of regulatory power within the scope of the enabling legislation.

III
It is here that we part company from DEP. In denying a full exemption, DEP argues that the Nationwide Permit, applicable to Criscuolo as of July 1, 1988, was for the filling of one road crossing in the amount of .06 acres. Accordingly, the revision upward to .83 acres (as a result of a mapping error) which took place after the July 1, 1988 cut-off, does not qualify for the exemption. This is a misinterpretation of the regulatory scheme which DEP so vigorously and successfully defended here. The exemption in N.J.A.C. 7:7A-2.7(g) is for "activities authorized under United States Army Corps of Engineers Nationwide Permits prior to July 1, 1988 ... provided the property owner can demonstrate that a nationwide permit provided authorization for a particular site and use prior to July 1, 1988." The "activity" authorized under 33 C.F.R. § 330.5(a)(26) is filling up to one acre of wetlands. As required by N.J.A.C. 7:7A-2.7(g)1, Criscuolo obtained a letter from the Corps on October 12, 1988, indicating that its proposal, submitted May *300 10, 1988, to fill .06 acres of wetlands fell within Nationwide Permit # 26. In June 1989, when confronted with the map revision reflecting a need to fill .83 acres of wetlands, the Corps again wrote to Criscuolo:
On April 25, 1989 you submitted additional information showing minor changes to the configuration of some of the roads and requested a reconfirmation that the new configuration would also be eligible for the same Nationwide General Permit. Our additional review indicates that your revised proposal continues to comply with the requirements of the Nationwide General Permit.

This Nationwide General Permit is prescribed at Title 33 of the Code of Federal Regulations. A copy of this part of the Federal Regulations Part 330.5(a)(26) is enclosed with the appropriate section marked for your convenience. The work may be performed without further contact with our office provided the permit conditions are satisfied. [Emphasis added].
That DEP is wide of the mark in its interpretation of the exemption is evidenced by its argument that the Nationwide Permit authorized Criscuolo to fill .06 acres and that Criscuolo now seeks "to engage in the full range of activities which could have been authorized by that Nationwide Permit." [Emphasis added]. Not so. Criscuolo seeks to engage in activities which were authorized by Permit # 26 and this is the critical distinction. The fact that Criscuolo originally indicated an intention to fill .06 acres and later found it necessary to fill.83 acres is of no moment. So long as the filling at the designated site does not exceed one acre, Nationwide Permit # 26 applies.
This reading of the regulation accords with the common sense of the scheme, which was to exempt from the FWPA applicants whose proposals were well underway, who had spent substantial amounts of time, effort and money and, in the case of Nationwide Permit # 26, whose activities have a relatively insignificant individual and cumulative impact on wetlands. 33 C.F.R. § 323.2(h). Criscuolo should thus be granted an exemption for the filling of up to one acre of wetlands as authorized by the Nationwide Permit.
Affirmed in part; reversed and remanded in part.
NOTES
[1] A freshwater wetland is defined in the Act as: "an area that is inundated or saturated by surface water or groundwater at a frequency and duration sufficient to support, and that under normal circumstances does support, a prevalence of vegetation typically adapted for life in saturated soil conditions, commonly known as hydrophytic vegetation; provided, however, that the department, in designating a wetland, shall use the 3-parameter approach (i.e. hydrology, soils and vegetation) enumerated in the April 1, 1987 interim-final draft `Wetland Identification and Delineation Manual' developed by the United States Environmental Protection Agency, and any subsequent amendments thereto." N.J.S.A. 13:9B-3.