636 A.2d 87

M. ALFIERI CO., INC., PLAINTIFF–APPELLANT, v. STATE OF
NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PRO-
TECTION AND ENERGY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 6, 1993—Decided January 10, 1994.

546

Before Judges PETRELLA, BAIME and CONLEY.

*Hellring, Lindeman, Goldstein & Siegal,* attorneys for appellant (*Charles Oransky,* on the brief).

*Fred DeVesa,* Acting Attorney General, attorney for respondent (*Joseph Yannotti,* Assistant Attorney General, of counsel; *Barbara Conklin,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

The Freshwater Wetlands Protection Act (*N.J.S.A.* 13:9B–1 to –30) (FWPA) provides a comprehensive regulatory scheme for the protection of New Jersey's freshwater wetlands. Toward this end, the Legislature instituted a permit program to be administered by the Department of Environmental Protection and Energy (DEPE) with stringent criteria designed to discourage disturbance of wetland areas. Certain classes of activities are exempted from the broad reach of the Act. These include projects for which the developer obtained site plan or subdivision approval pursuant to the Municipal Land Use Law (*N.J.S.A.* 40:55D–1 to –136) (MLUL) prior to the effective date of the FWPA. *N.J.S.A.* 13:9B–4d(1).

Appellant M. Alfieri Co., Inc. sought an exemption on the basis that its predecessor in title obtained final site plan approval under the Municipal Planning Act (*N.J.S.A.* 40:55–1 to –67) (MPA) in 1968. The MPA was repealed when the Legislature enacted the MLUL. Alfieri asserted, however, that a sewer moratorium prevented it from developing the property and that the period of site plan approval was tolled under both the MPA and the MLUL. The DEPE denied Alfieri's application on the ground that the statutory exemption applied only to approvals granted by local authorities under the MLUL. We agree with this determination. However, we remand the matter to the DEPE for further proceedings to determine whether Alfieri had obtained a permit from the United States Army Corps of Engineers and was thus exempt from the requirements of the FWPA.

## I.

The subject property is comprised of 13.345 acres located in the Township of Little Falls. On April 4, 1968, Fenlon Manor, Alfieri's predecessor in title, obtained final subdivision approval from the Township's planning board pursuant to the MPA. Alfieri purchased the property in 1970 and obtained final subdivision approval in July of that year. The subdivision approval was perfected on October 23, 1970, when the subdivision map was filed with the Passaic County Registrar. Alfieri posted a performance bond shortly thereafter.

After the bond was posted, Alfieri received notice from the DEPE that it intended to impose a sewer moratorium that would include its site because the Township's treatment plant had reached or exceeded its capacity. In later correspondence, dated February 20, 1973, the DEPE indicated that exceptions to the moratorium would be made "where building permits, final subdivision and site plan approvals ha[d] been granted" prior to its letter. The DEPE further noted that "consideration [would] be given to situations [involving] hardship[s] ... or other special circumstances" in order to "minimize the impact" of the sewer moratori-

um. Despite the DEPE's references to "exceptions," Alfieri never sought an exemption from the moratorium. Instead, it simply halted development of the project.

The moratorium remained in effect until January 1989. Shortly before it was vacated, Alfieri sought a determination from the Army Corps of Engineers that its delineation of wetlands on the site was correct. Although the record does not specifically indicate the extent of wetlands on the property, Alfieri claimed that less than one acre was involved. On November 16, 1988, the Corps agreed with Alfieri's wetlands delineation.

We digress to note Alfieri's contention that the property falls within the purview of a federal "[n]ationwide [p]ermit." A nationwide permit, also known as a permit by regulation, allows certain activities which have relatively insignificant impact on wetlands without further review by the Corps. *See* 33 *C.F.R.* § 323.2(h). Nationwide permit no. 26 authorizes the filling of less than one acre of wetlands. *See* 33 *C.F.R.* app. A § 330 (formerly 33 *C.F.R.* § 330.5(a)(26)). As we will note later in our opinion, Alfieri contends that the Corps' letter accepting its wetlands delineation constituted authorization under nationwide permit no. 26 which, under certain circumstances, is exempt from the FWPA. We thus quote the Corps' letter *verbatim.*

> We strongly recommend that development of the site avoid the discharge of dredged or fill material into the delineated waters of the United States. *If this can be accomplished, a Department of the Army permit will not be required and no further contact with this office is necessary.* If this cannot be accomplished, an individual permit may be required if the proposed activity does not meet the criteria or special conditions of an existing nationwide general permit (33 *C.F.R.* Part 330). (Emphasis added.)

On May 16, 1990, Alfieri applied to the DEPE for an exemption from the permit requirements of the FWPA. In its letter, Alfieri claimed that the project was exempt because it and its predecessor in title had obtained subdivision approval for development of the property under the MPA. The DEPE denied Alfieri's application on the ground that the subdivision approval predated the MLUL and that municipal subdivision grants under the MPA, the predecessor statute, did not provide grounds for an exemption.

On November 11, 1991, Alfieri submitted a more detailed request for an exemption in which it argued that a subdivision approval under the MPA had essentially the same effect as one granted under the MLUL. As an alternative basis for an exemption, Alfieri claimed that development of the property required filling less than one acre of wetlands and, therefore, the project was authorized by federal regulation.

The DEPE granted Alfieri's request for a hearing and transferred the matter to the Office of Administrative Law. On July 9, 1992, an administrative law judge issued an initial decision in which she concluded that projects having received subdivision approval under the MPA were not exempt from the FWPA. The judge refused to consider Alfieri's claim that development of the property was covered by nationwide permit no. 26 because that contention had not been advanced in a timely manner and was not supported by sufficient documentation. The judge also determined that the sewer moratorium had no impact upon application of the FWPA. On September 25, 1992, the Commissioner of the DEPE adopted the findings and conclusions contained in the initial decision and denied Alfieri's request for an exemption. This appeal followed.

Alfieri contends that projects for which subdivision approvals were granted under the MPA are exempt from the FWPA. Likewise, it contends that projects for which subdivision applications were submitted under the MPA are exempt from the FWPA. Alfieri further argues that the MPA regulated subdivisions in essentially the same way as the MLUL and, therefore, the constitutional right to equal protection demands that approvals under each statute be treated in similar fashion. Alfieri also claims that its project is authorized under nationwide permit no. 26 and is thus exempt from the FWPA. Alfieri's final argument is that the subdivision approval period was tolled by reason of the sewer moratorium and that it would be unfair to now apply the FWPA's stringent wetlands requirements. We examine these contentions *seriatim.*

## II.

We begin our analysis with a brief overview of the FWPA and its implementing regulations.

The FWPA became effective on July 1, 1988. Prior to its enactment, wetlands were regulated piecemeal by a variety of federal and state agencies. *A.R. Criscuolo & Assocs. v. N.J. Dep't of Envtl. Protection,* 249 *N.J.Super.* 290, 295, 592 *A.*2d 313 (App. Div.1991). The articulated objective of the statutory scheme was to provide a single, comprehensive program for the "systematic review" of freshwater wetlands activities. *N.J.S.A.* 13:9B–2; *see also N.J. Chapter of the Nat'l Ass'n of Indus. and Office Parks v. N.J. Dep't of Envtl. Protection,* 241 *N.J.Super.* 145, 153–56, 574 *A.*2d 514 (App.Div.), *certif. denied,* 122 *N.J.* 374, 585 *A.*2d 379, 380 (1990). The legislative goal was "to preserve the purity and integrity of freshwater wetlands" and to protect these and transitional areas "from random, unnecessary or undesirable alteration or disturbance." *N.J.S.A.* 13:9B–2. To achieve that objective, the Legislature consolidated other regulatory programs, *see N.J.S.A.* 13:9B–5 and *N.J.S.A.* 13:9B–30, and developed a stringent permitting process to be administered by the DEPE, *see N.J.S.A.* 13:9B–9.

The Legislature recognized that comprehensive regulation of wetland areas impacted upon the rights of private property owners. In its findings and declarations, the Legislature observed that the "rights of persons who own or possess real property affected by [the FWPA] must be fairly recognized and balanced with environmental interests." *N.J.S.A.* 13:9B–2. Of particular concern were individuals who had projects well underway prior to adoption of the Act. *A.R. Criscuolo & Assocs. v. N.J. Dep't of Envtl. Protection* 249 *N.J.Super.* at 298, 592 *A.*2d 313. The Legislature sought to protect those "who had spent substantial amounts of time, effort and money" on developing their properties and who had obtained federal or local approval of these activities. *Ibid.*

The Legislature thus "grandfathered" certain classes of activities from the broad reach of the Act. *N.J.S.A.* 13:9B–4d provides exemptions for projects with certain types of federal or local approvals:

> Projects for which (1) preliminary site plan or subdivision applications have received preliminary approvals from the local authorities pursuant to the "Municipal Land Use Law," P.L.1975, c. 291 (C. 40:55D–1 et seq.) prior to the effective date of this act, (2) preliminary site plan or subdivision applications have been submitted prior to June 8, 1987, or (3) permit applications have been approved by the U.S. Army Corps of Engineers prior to the effective date of this act, which projects would otherwise be subject to State regulation on or after the effective date of this act, shall be governed only by the Federal Act, and shall not be subject to any additional or inconsistent substantive requirements of this act. . . .

Regulations designed to implement these statutory exemptions were later adopted by the DEPE. *See, e.g., N.J.A.C.* 7:7A–2.9. These provisions form the basis for Alfieri's contentions.

### III.

■ We first consider Alfieri's argument that subdivisions granted approval under the MPA are exempt from the FWPA under *N.J.S.A.* 13:9B–4d(1). We disagree for several reasons.

■ Initially, we stress that Alfieri's interpretation of the exemption conflicts with the plain meaning of the statutory language. The exemption in *N.J.S.A.* 13:9B–4d(1) does not apply since it expressly refers only to site plan or subdivision approvals obtained from local authorities pursuant to the MLUL. The Legislature did not state that approvals granted under zoning laws in effect prior to enactment of the MLUL would be sufficient, no matter how remote in time. The language in which the exemption is framed is crystal clear. The DEPE has applied the exemption in accordance with the plain meaning of the statutory language. Its interpretation of the exemption is entitled to substantial deference. *See Waterfront Comm'n v. Mercedes–Benz,* 99 *N.J.* 402, 415, 493 *A.*2d 504 (1985). It is not our function to create additional exemptions. *See Township of Brick v. Spivak,* 95 *N.J.Super.* 401, 406, 231 *A.*2d 380 (App.Div.), *aff'd,* 49 *N.J.* 400, 230 *A.*2d 503 (1967). Instead, our role is to enforce the statute

"according to its terms." *Sheeran v. Nationwide Mutual Ins. Co.,* 80 *N.J.* 548, 556, 404 *A*.2d 625 (1979) (quoting *Caminetti v. United States,* 242 *U.S.* 470, 485, 37 *S.Ct.* 192, 194, 61 *L.Ed.* 442, 452 (1917)); *see also Vreeland v. Byrne,* 72 *N.J.* 292, 302, 370 *A*.2d 825 (1977).

■ Our refusal to go beyond the statutory language is particularly efficacious here because we are dealing with an exemption from a comprehensive policy designed to protect environmental interests. Exemptions from statutes are strictly construed. *Wright v. Vogt,* 7 *N.J.* 1, 6, 80 *A*.2d 108 (1951). "To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people." *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 559, 362 *A*.2d 13 (1976) (quoting *Phillips v. Walling,* 324 *U.S.* 490, 493, 65 *S.Ct.* 807, 808, 89 *L.Ed.* 1095, 1099 (1945)). We note that a bill has been introduced expanding the exemption to include approvals granted under the MPA. S. 985, 205th Leg., 1st Sess. (1992). Unless and until that bill is enacted into law, we are content to rely upon the precise meaning of the statutory language currently in force.

We are not persuaded by Alfieri's argument that MPA and MLUL approvals should be treated identically because the MLUL "grandfathered" MPA approvals. We have found no specific provision in the MLUL that expressly continues in force approvals granted under the MPA. Alfieri erroneously asserts that *L.*1975, *c.* 291, § 81 had that effect. Subsection (c) of the law provides that "[a]ll applications for development made pursuant to lawful authority preceding the effective date of this act may be continued." Subsection (a) then permits "any municipality regulating development prior to the effective date of this act" pursuant to prior statutes "to continue to exercise such authority" for a period of six months after the effective date of the act or until such time as it exercises the authority delegated by the act, whichever is shorter. As explained in *Taxpayers Ass'n v. Weymouth Township,* 80 *N.J.* 6, 364 *A*.2d 1016 (1976), *cert. denied sub nom.,*

*Feldman v. Weymouth Township,* 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1977), this statute does not "grandfather" approvals granted by the MPA. Instead, the act was "intended to allow municipalities sufficient time in which to bring their zoning ordinances into conformity with [the MLUL] and, at the same time, to protect the integrity of pending applications." *Id.* at 54, 364 *A.*2d 1016. The effect of the law was to continue in force applications pending when the MLUL was enacted and to permit local authorities to approve such applications if they would have been valid under the preexisting law. *Ibid.* In a similar vein, Alfieri's reliance on *L.*1987, *c.* 129, § 11 is clearly misplaced. That law states that recently enacted statutes dealing with municipal development agreements relating to planned developments are to take effect immediately, "but shall not apply to any developer who has received final approval of a site plan or subdivision." This statute does not in any way continue in force or reinstate approvals granted under the MPA.

Even if the MLUL contained a provision expressly continuing the validity of site plan and subdivision approvals granted pursuant to the MPA, it would make no difference. A grandfather clause would immunize such projects from zoning changes and would permit development in accordance with the terms of the approval. It would not, however, transmogrify an MPA approval into one granted pursuant to the MLUL. Nor would it signify that the site plan or subdivision satisfied the more stringent environmental and other requirements of the MLUL. Had the Legislature intended to exempt MPA approvals from the requirements of the FWPA, it would have said so. Instead, the exemption is limited to approvals granted pursuant to the MLUL prior to the effective date of the FWPA.

Our construction of the statute is supported by important public policy concerns. Contrary to Alfieri's argument, the requirements of the MPA and the MLUL are not identical. The MLUL is far more focused upon environmental interests than was its predecessor. The environmental concerns reflected in the MLUL's re-

quirements are more in keeping with the policies embodied in the FWPA. For example, the purposes of the MLUL specifically refer to environmental interests not reflected in the MPA. *Compare N.J.S.A.* 40:55D–2 with *N.J.S.A.* 40:55–32. Among other things, the objectives of the MLUL are "[t]o provide adequate light, air and open space[,]" *N.J.S.A.* 40:55D–2c, "[t]o promote . . . appropriate population densities and concentrations that will contribute to the . . . preservation of the environment[,]" *N.J.S.A.* 40:55D–2e, "[t]o provide [open] space . . . according to . . . environmental requirements[,]" *N.J.S.A.* 40:55D–2g, "[t]o promote a desirable visual environment[,]" *N.J.S.A.* 40:55D–2i, "[t]o promote the conservation of . . . open space, energy resources and valuable natural resources[,]" *N.J.S.A.* 40:55D–2j, "to prevent urban sprawl and degradation of the environment[,]" *N.J.S.A.* 40:55D–2j, "[t]o encourage . . . recreational development[,]" *N.J.S.A.* 40:55D–2k, "[t]o promote utilization of renewable energy resources[,]" *N.J.S.A.* 40:55D–2n, and "[t]o promote the maximum practicable recovery . . . of recyclable materials," *N.J.S.A.* 40:55D–2o. These general goals are reflected in the substantive requirements of the statutory scheme. *See, e.g., N.J.S.A.* 40:55D–38b(7), (8), (9), and (13); *N.J.S.A.* 40:55D–40b. The point to be stressed is that the MLUL is far more environmentally sensitive than was its predecessor. A project which would have been approved under the MPA would not necessarily be considered appropriate under the standards provided by the MLUL.

Additional public policy considerations strongly militate in favor of limiting the exemption to approvals granted pursuant to the MLUL. If we were to read *N.J.S.A.* 13:9B–4d(1) to provide exemptions to projects for which approvals were granted under the MPA, we would be endorsing the actions of developers who have slept on their rights for an unlimited number of years. So too, we would be authorizing the application of planning standards that may now appear archaic in light of our present focus on environmental interests.

The result we reach here is also consistent with our opinion in *In re Stemark Assocs.*, 247 *N.J.Super.* 13, 588 *A.*2d 830 (App.Div. 1991). There, the developer purchased eight separate lots, consolidated them into two, and then received two building permits for the erection of a single-family dwelling on each lot. *Id.* at 16, 588 *A.*2d 830. The developer contended that it was entitled to an exemption under *N.J.S.A.* 13:9B–4d(2) because the property had been subdivided in 1889 or 1890. *Id.* at 18, 588 *A.*2d 830. It argued, as does Alfieri here, that the legislative purpose underlying *N.J.S.A.* 13:9B–4d(2) was to exempt from the FWPA's requirements landowners who invested substantial time and money into their projects before the effective date of the Act. *Ibid.* Based upon our analysis of the statute, we held that the developer's properties did "not come within the provisions of any of the exemptions in *N.J.S.A.* 13:9B–4d." *Id.* at 19, 588 *A.*2d 830. In *dictum,* we observed, "[c]learly[ ] Stemark did not have approval under the [MLUL] for either a subdivision or a site plan and hence the exemption in d(1) does not apply since it refers only to preliminary site plan or subdivision applications *received* under MLUL." *Ibid.* While noting that *N.J.S.A.* 13:9B–4d(2) "does not specifically refer to the MLUL," we held that the "thrust of the d(2) exemption is to apply to live or viable applications that were then actually filed and pending prior to [the effective date of the FWPA], but which had not yet been approved." *Ibid.* In reaching these conclusions, we added "[t]he Legislature did not state that any applications submitted under either the [MPA] or any map act in effect prior to the MLUL would be sufficient, no matter how remote in time, and we will not presume such an intent." *Id.* at 20–21, 588 *A.*2d 830.

Although the precise issue decided in *In re Stemark Assocs.*, 247 *N.J.Super.* 13, 588 *A.*2d 830, pertained to *N.J.S.A.* 13:9B–4d(2), our observations relating to *N.J.S.A.* 13:9B–4d(1) clearly foreshadowed the result we reach here. We now hold that site plan and subdivision approvals granted under the MPA do not exempt projects from the requirements of the FWPA.

### IV.

■ We also conclude that Alfieri's project is not exempt under *N.J.S.A.* 13:9B–4d(2). That exemption encompasses "preliminary site plan or subdivision applications . . . submitted prior to June 8, 1987." *Ibid.* In our view, this exemption was intended to continue the theme in *N.J.S.A.* 13:9B–4d(1). A logical reading of *N.J.S.A.* 13:9B–4d(2) requires that it be tied into the MLUL. In adopting this exemption, the Legislature was addressing situations where preliminary site plan or subdivision applications were submitted under the MLUL prior to June 8, 1987, and remained pending. That was our holding in *In re Stemark Assocs.*, 247 *N.J.Super.* at 19–20, 588 *A.*2d 830. Although Alfieri claims that *In re Stemark Assocs.*, 247 *N.J.Super.* 13, 588 *A.*2d 830, was wrongly decided, we find this contention wholly unpersuasive.

### V.

■ We need not tarry with Alfieri's equal protection argument. Alfieri contends that the requirements of the MPA and the MLUL are identical and, therefore, site plan and subdivision approvals granted under both statutes must be treated in exactly the same fashion. As we pointed out earlier, the requirements of the MPA and the MLUL are substantially different. The substantive provisions of the MLUL are more focused upon environmental concerns than were those of the predecessor statute. It was not irrational for the Legislature to treat the two classes of approvals differently. Because the FWPA does not affect a suspect or semi-suspect class and does not attempt to regulate a fundamental right, it need be only rationally related to a legitimate state interest to satisfy federal equal protection requirements. *See Dandridge v. Williams*, 397 *U.S.* 471, 484–85, 90 *S.Ct.* 1153, 1161–62, 25 *L.Ed.*2d 491, 501–02 (1970). The legislative classification clearly satisfies that test. In a similar vein, the Legislature's refusal to exempt MPA approvals while excepting those granted under the MLUL prior to the effective date of the FWPA plainly satisfies the balancing test applicable under article

I, paragraph 1 of the New Jersey Constitution. *See Brown v. City of Newark,* 113 *N.J.* 565, 573–74, 552 *A.*2d 125 (1989); *Barone v. Department of Human Servs.,* 107 *N.J.* 355, 368, 526 *A.*2d 1055 (1987); *Greenberg v. Kimmelman,* 99 *N.J.* 552, 567, 494 *A.*2d 294 (1985); *Right to Choose v. Byrne,* 91 *N.J.* 287, 308–09, 450 *A.*2d 925 (1982).

## VI.

We now turn to Alfieri's argument that its project is exempt from the requirements of the FWPA because it was granted a nationwide permit by the Army Corps of Engineers prior to July 1, 1988. It will be recalled that the administrative law judge did not consider the substantive merits of Alfieri's claim. Although the initial decision is somewhat unclear on this point, the administrative law judge apparently believed that Alfieri "never formally requested an exemption under [*N.J.S.A.* 13:9B–4d(3) ]" and did not "provide[ ] documentary support." As we mentioned earlier in this opinion, the Commissioner of the DEPE adopted the findings and conclusions contained in the administrative law judge's initial decision.

Initially, we disagree with the finding that Alfieri never sought an exemption under *N.J.S.A.* 13:9B–4d(3). Although no reference was made to that subsection in Alfieri's initial request on May 16, 1990, its subsequent letter, dated November 11, 1991, contained a detailed argument that the project was covered by nationwide permit no. 26. Perhaps, Alfieri's request was somewhat untimely. However, no prejudice resulted. We are of the view that the administrative law judge should have considered Alfieri's request for an exemption under *N.J.S.A.* 13:9B–4d(3).

We acknowledge that Alfieri did not file an exception to the initial decision on this basis. The DEPE thus contends that the issue was not before the Commissioner and should not be considered by this court. While we do not minimize the importance of filing exceptions to an administrative law judge's recommended findings, *see N.J.S.A.* 52:14B–10, we do not think that Alfieri

should be barred from raising the *N.J.S.A.* 13:9B–4d(3) exemption here. The administrative law judge made no substantive findings concerning this exemption. Although Alfieri should have raised the question in the proceedings before the Commissioner, the parties have thoroughly briefed the issue here. Under these circumstances, we exercise our discretion and consider the point.

▮ In accordance with *N.J.S.A.* 13:9B–25, the DEPE adopted regulations concerning the documentation a developer must submit in order to qualify for an exemption under *N.J.S.A.* 13:9B–4d(3). The applicable regulation, *N.J.A.C.* 7:7A–2.7(g), which has been recodified in *N.J.A.C.* 7:7A–2.9(b)6i, provides that an applicant must submit:

> A copy of the valid Corps Nationwide permit authorization issued prior to July 1, 1988, or a copy of all information submitted to the Corps requesting authorization under an issued Nationwide permit, proof that the information was received by the Corps prior to June 10, 1988, and received subsequent authorization[.]

We agree with the conclusion of the administrative law judge that the Corps' acceptance of Alfieri's wetlands delineation did not satisfy the requirements of the regulation. However, certain language in the Corps' letter of November 16, 1988 gives us pause. Although the Corps did not specifically refer to nationwide permit no. 26, it did note that "no further contact with this office [was] necessary" if Alfieri could "avoid the discharge of dredged or fill material into the delineated waters of the United States." This language supports Alfieri's claim that it received a "nationwide permit by regulation."

We are convinced that the interests of justice are best served by affording Alfieri an opportunity to supplement its request for an exemption under *N.J.S.A.* 13:9B–4d(3). It is undisputed that Alfieri has invested a substantial amount of time, effort and money in seeking to develop this property. Under these circumstances, Alfieri should be given a second chance to show that its proposed activities fall within the purview of nationwide permit no. 26. We remand the matter for this purpose.

## VII.

 Finally, we find no merit in Alfieri's claim that the tolling provision contained in *N.J.S.A.* 40:55D–21 preserved its right to develop the property in accordance with the subdivision approval obtained in 1968. Alfieri asserts that the sewer moratorium prevented it from developing the property, thus triggering the tolling statute. It is argued that Alfieri had a vested right which could not be abrogated by the enactment of the FWPA. We disagree.

*N.J.S.A.* 40:55D–21 provides:

In the event that, during the period of approval heretofore or hereafter granted to an application for development, the developer is *barred or prevented, directly or indirectly, from proceeding with the development otherwise permitted under such approval by a legal action instituted by any State agency,* political subdivision or other party to protect the public health and welfare or by a directive or order issued by any State agency, political subdivision or court of competent jurisdiction to protect the public health or welfare *and the developer is otherwise ready, willing and able to proceed with said development, the running of the period of approval under this act or under any act repealed by this act, as the case may be, shall be suspended for the period of time said legal action is pending or such directive or order is in effect.* [Emphasis added.]

Initially, we point out that the sewer moratorium did not prevent Alfieri from proceeding with the development. As we noted earlier in this opinion, the DEPE permitted exceptions "where building permits, final subdivision and site plan approvals ha[d] been granted" prior to the inception of the moratorium. Additionally, Alfieri could have sought an exemption from the moratorium based upon "hardship conditions." On the record before us, it cannot fairly be said that the moratorium barred Alfieri from continuing with the project.

 Even if the subdivision approval was tolled by the sewer moratorium, the result would not be different. A grant of preliminary subdivision approval carries with it certain rights under the MPA, *see L.* 1953, *c.* 433, § 18, and the MLUL, *see N.J.S.A.* 40:55D–49. In general, the property owner is protected "against the application of adverse zoning amendments unrelated to public health or safety for up to five years from the grant of preliminary

[subdivision] approval." *Palatine I v. Planning Bd.*, 133 *N.J.* 546, 553, 628 *A.2d* 321 (1993). However, nothing in the MPA or the MLUL suggests that this restriction applies to other competent areas of regulation. *See Ocean Acres, Inc. v. State*, 168 *N.J.Super.* 597, 601, 403 *A.2d* 967 (App.Div.), *certif. denied*, 81 *N.J.* 352, 407 *A.2d* 1226 (1979). We believe that government may impose additional conditions on development rights when necessary to promote public health and safety.

We thus conclude that the DEPE properly denied Alfieri an exemption from the requirements of the FWPA under *N.J.S.A.* 13:9B–4d(1) and (2). We also agree that the tolling provision contained in *N.J.S.A.* 40:55D–21 did not obviate the necessity to comply with the FWPA. We remand the matter for further proceedings relating to Alfieri's claim of an exemption under *N.J.S.A.* 13:9B–4d(3). We do not retain jurisdiction.