247 N.J. Super. 13 (1991)
588 A.2d 830
IN RE STEMARK ASSOCIATES/REQUEST TO VACATE EXEMPTION LETTER DENIAL.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1991.
Decided March 20, 1991.
*15 Before Judges PETRELLA, MUIR, Jr. and BROCHIN.
Rachel N. Davidson argued the cause for appellant Stemark Associates (Hellring Lindeman Goldstein & Siegal, attorneys; Rachel N. Davidson, on the brief).
Carol A. Blasi, Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (Robert J. Del Tufo, Attorney General, attorney; Carol A. Blasi, on the letter brief).
PER CURIAM.
The New Jersey Department of Environmental Protection (DEP) denied Stemark Associates (Stemark) an exemption from the provisions of the Freshwater Wetlands Protection Act (N.J.S.A. 13:9B-1 et seq.) (Wetlands Act) for construction of two single-family dwellings on eight lots which were delineated on an 1890 filed map.[1]
*16 Stemark claims entitlement to an exemption from the permit and transition area requirements of the Wetlands Act under the provisions of N.J.S.A. 13:9B-4. On this appeal, Stemark challenges the DEP's interpretation of the exemptions in the statute and argues that the Wetlands Act clearly intended to grandfather property owners standing in the same position as Stemark.
Stemark purchased eight lots in Dover Township for $30,000 on March 7, 1985, which it chose to assemble[2] into two lots of approximately 13,000 square feet each. Under the township's zoning ordinance 7,500 square feet are necessary to build a one-family dwelling. Hence, Stemark merged or assembled the eight nonconforming lots into two conforming lots under the municipality's zoning ordinance. Stemark applied for and received two building permits on April 28, 1987 from the Township of Dover construction official for the erection of a one-family dwelling on each lot.
Stemark argues that the lots had been "subdivided" into eight lots at some unspecified date prior to the date it purchased the property, thus eliminating any need for it to apply for preliminary or final subdivision approvals. It relies, for this proposition, on a statement in its title insurance policy that the property was subdivided prior to June 24, 1890 as evidenced by a "`Map of Bayview, Windsor Park, Ocean Co., N.J. 1889' which was filed in the Ocean County's Clerk's office."
*17 After it received building permits, Stemark says that it staked the lots and had the land cleared. However, before a foundation was laid the township informed Stemark that an exemption letter was required from the DEP under the Freshwater Wetlands Protection Act.
In December 1988, Stemark requested an exemption letter from the DEP. By a June 1, 1989 letter, the DEP denied the requested exemption on the ground that the permits issued by the Dover Township Construction Official were not a basis for an exemption under the statute or the DEP's implementing regulations[3] (N.J.A.C. 7:7A-2.7(d)).
Stemark's subsequent request for an administrative hearing as a contested matter was denied on the ground that there was no statutory or constitutional right to such a hearing.[4]
On this appeal Stemark presents the narrow issue of the construction and interpretation of the exemption provisions of the Freshwater Wetlands Protection Act in N.J.S.A. 13:9B-4, which read as follows:
4. The following are exempt from the requirement of a freshwater wetlands permit and transition area requirements unless the United States Environmental Protection Agency's regulations providing for the delegation to the state of the federal wetlands program conducted pursuant to the Federal Act require a permit for any of these activities, in which case the department shall require a permit for those activities so identified by that agency:
* * * * * * * *

*18 d. Projects for which (1) preliminary site plan or subdivision applications have received preliminary approvals from the local authorities pursuant to the `Municipal Land Use Law,' P.L. 1975, c. 291 (C. 40:55D-1 et seq.) prior to the effective date of this act, (2) preliminary site plan or subdivision applications have been submitted prior to June 8, 1987, or (3) permit applications have been approved by the U.S. Army Corps of Engineers prior to the effective date of this act, which projects would otherwise be subject to State regulation on or after the effective date of this act, shall be governed only by the Federal Act, and shall not be subject to any additional or inconsistent substantive requirements of this act; provided, however, that upon the expiration of a permit issued pursuant to the Federal Act any application for a renewal thereof shall be made to the appropriate regulatory agency. .. .
According to Stemark, the legislative intent and purpose of the exemption in N.J.S.A. 13:9B-4d is to grandfather those property owners in a similar position to it, who had invested substantial time and money into projects prior to adoption of the act. Specifically, Stemark contends that it is exempt under N.J.S.A. 13:9B-4d(2) since it asserts that a preliminary site plan or subdivision application must have been submitted prior to the property being "subdivided" in 1889 or 1890.
Although the purpose of the Wetlands Act is clear, the language of the exemptions are not so precisely drawn. We recognize that generally courts give considerable weight to the interpretation of a statute by the agency responsible for enforcing the statute. See Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973). However, the courts are not bound by the agency's interpretation where a question of law is involved. Ibid. See also Smith v. Director, Division of Taxation, 108 N.J. 19, 26, 527 A.2d 843 (1987); In re Boardwalk Regency Casino License Application, 180 N.J. Super. 324, 333, 434 A.2d 1111 (App.Div. 1981), aff'd as modified 90 N.J. 361, 447 A.2d 1335 (1982). Construction of a statute is a judicial, not an executive function. Service Armament Co. v. Hyland, 70 N.J. 550, 561, 362 A.2d 13 (1976). In our approach to the interpretation of the exemption provisions we also recognize that, as a general matter, exemptions from statutes are *19 generally strictly construed. Id. at 558-559, 362 A.2d 13; Wright v. Vogt, 7 N.J. 1, 6, 80 A.2d 108 (1951).
From our analysis of the statute, Stemark's properties in Dover Township do not come within the provisions of any of the exemptions in N.J.S.A. 13:9B-4d.[5] Clearly, Stemark did not have approval under the Municipal Land Use Law (MLUL) for either a subdivision or a site plan and hence the exemption in d(1) does not apply since it refers only to preliminary site plan or subdivision applications received under the MLUL.
As we construe the statute, the exemption in d(2) was intended to continue the theme in d(1). A statute must be read to give effect to all its parts without reaching an absurd result. Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 521, 472 A.2d 517 (1984); Beaudoin v. Belmar Tavern Owners Ass'n, 216 N.J. Super. 177, 184-185, 523 A.2d 256 (App.Div. 1987), certif. den. 107 N.J. 626, 527 A.2d 451 (1987). The logical reading of the exemption in d(2) requires that it be tied into the MLUL because there had to have been an application "submitted" prior to June 8, 1987 (a date fixed during the legislative process of the bill which became the subject Wetlands Act). Subsection d(2) does not specifically refer to the MLUL, nor does it say "preliminary site plan or subdivision applications" approved or maps filed prior to that date. The thrust of the d(2) exemption is to apply to live or viable applications that were then actually filed and pending prior to June 8, 1987, but which had not yet been approved. Of necessity this would have been under the MLUL. See Matter of Freshwater Wetlands Rules, N.J.A.C. 7:7A-1.1 et seq., 238 N.J. Super. 516, 530, 570 A.2d 435 (App.Div. 1989). Stemark's position would virtually eradicate the control of the statute because it argues that tax *20 map designation creates an exemption. All the property in the State is shown on a municipal tax map in some way, whether or not MLUL preliminary site plan or subdivision approval had been received.[6]
If we were to read the language in d(2) to provide exemptions to all "projects for which preliminary site plan or subdivision applications have been submitted prior to June 8, 1987," no matter when or whether or not those applications had ever been approved, that interpretation would arguably have the effect of purporting to exempt applications which had been submitted and denied. Surely, that could not have been the Legislature's intent.[7] Moreover, it would encourage the potential practice alluded to in Matter of Freshwater Wetlands Rules, N.J.A.C. 7:7A-1.1 et seq., supra, 238 N.J. Super. at 529, 570 A.2d 435, where developers could sleep on a claimed exemption for an unlimited number of years. It is not our function to create additional exemptions, that function belongs to the Legislature. Township of Brick v. Spivak, 95 N.J. Super. 401, 406, 231 A.2d 380 (App.Div. 1967), aff'd 49 N.J. 400, 230 A.2d 503 (1967).
In our view, in exemption d(2) the Legislature was addressing situations where preliminary site plan or subdivision applications were submitted under the MLUL prior to June 8, 1987, and the applications were still viable under the MLUL. The Legislature did not state that any applications submitted under *21 either the zoning law[8] or any map act[9] in effect prior to the MLUL would be sufficient, no matter how remote in time, and we will not presume such an intent.
We are satisfied that Stemark's situation is not included in the exemption provisions of N.J.S.A. 13:9B-4d. Thus, since the development application does not qualify under any of the exemptions enumerated, Stemark's undeveloped land is subject to the act if it otherwise qualifies as wetlands.
Affirmed.
NOTES
[1] In 1890 New Jersey did not have zoning and planning laws as such. Indeed, it was not until approximately 1928 that zoning and planning laws became in vogue and were accepted as a proper exercise of the police power. The Zoning Enabling Act, N.J. Rev. Stat. 40:55-30 et seq., was enacted in 1928 as New Jersey's first attempt at promulgating zoning laws. The act was repealed by the Municipal Planning Act (1953) (L. 1953, c. 433, § 1), N.J.S.A. 40:55-1.1 et seq., which was in turn repealed by L. 1975, c. 291, § 80. See also Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); Mansfield & Swett v. Town of West Orange, 120 N.J.L. 145, 198 A. 225 (Sup.Ct. 1938). See 36 Frizell and Pozycki, N.J. Practice, Land Use Law, § 1.1, at 1-3 (1989).
[2] Although Stemark contends that the lots were consolidated by the issuance in 1987 of two building permits, Stemark cites no authority for its contention. Apparently, no formal action was taken to merge or assemble the eight lots into two lots. We are not furnished with copies of the tax assessment maps and are unaware if the tax collector or tax assessor "erased" lot lines which previously existed. Contiguous, nonconforming vacant lots, assembled under common ownership, lose their individual identity and become a single parcel. Loechner v. Campoli, 49 N.J. 504, 509-512, 231 A.2d 553 (1967); Bridge v. Neptune Tp. Zoning Bd. of Adjustment, 233 N.J. Super. 587, 592-595, 559 A.2d 855 (App.Div. 1989). N.J.S.A. 40:55D-7(5) exempts from subdivision conforming lots on the tax maps of the municipality.
[3] On February 19, 1991, the DEP proposed amendments to N.J.A.C. 7:7A-2.7(d) in response to Matter of Freshwater Wetlands Rules, N.J.A.C. 7:7A-1.1 et seq., 238 N.J. Super. 516, 570 A.2d 435 (App.Div. 1989), which invalidated provisions in (d)1 and 2 that provided permit exemption termination deadlines without statutory authority. See 22 N.J.R. 338-344.
[4] The DEP denied Stemark's request for a hearing on December 20, 1989. We do not know when Stemark received that denial. Stemark did not file its notice of appeal until February 20, 1990. The appeal may not have been timely filed from that denial.
[5] Had Stemark qualified for an exemption we conclude that it would have been entitled to a letter of exemption under N.J.A.C. 7:7A-2.9.
[6] Mere clearing of the property in connection with building permits is not the substantial time and resources in project planning and development contemplated by the thrust of the exemption provisions.
[7] A proposed amendment to N.J.A.C. 7:7A-2.7(d)2 directly addresses such an interpretation. The proposal specifically refers to "projects for which preliminary site plan or property for which subdivision applications as defined in N.J.S.A. 40:55D-1 et seq. have been submitted to the local authorities prior to June 8, 1987 and subsequently approved." 23 N.J.R. 343. (Bold in original to show additions).
[8] See the Zoning Enabling Act, N.J. Rev. Stat. 40:55-30, its successor, the Municipal Planning Act (1953), N.J.S.A. 40:55-1.1 et seq. (L. 1953, c. 433, § 1) (repealed by L. 1975, c. 291, § 80).
[9] For instance, the Old Map Act, N.J. Rev. Stat. 46:23-1 (repealed by L. 1953, c. 358, § 7); and the Official Map and Building Permit Act (1953), N.J.S.A. 40:55-1.30 et seq., (repealed by L. 1975, c. 291, § 80). For a discussion of the history of the term "official map" see Nigro v. Planning Board of Saddle River, 122 N.J. 270, 275, 584 A.2d 1350 (1991).