278 N.J. Super. 108 (1994)
650 A.2d 797
MCG ASSOCIATES, DAVE JACKSON HOMES, INC., FLM COMPANY, JOHN CORTESE, PHILCO, INC., J.S. HOVNANIAN & SONS, INC., MATERA DEVELOPMENT CORP., AND NEW JERSEY BUILDERS ASSOCIATION, PLAINTIFFS-APPELLANTS,
v.
DEPARTMENT OF ENVIRONMENTAL PROTECTION,[1] DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1994.
Decided December 12, 1994.
*110 Before Judges KING, MUIR, Jr. and D'ANNUNZIO.
Paul H. Schneider argued the cause for appellants (Giordano, Halleran & Ciesla, attorneys for appellants; Michael J. Gross, of counsel; Mr. Schneider, on the brief).
Rachel Horowitz, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General, attorney for respondent; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Horowitz, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.

I
The New Jersey Builders Association and six individual developers challenge that portion of N.J.A.C. 7:7A-2.7(i) which invalidated transition area exemptions when the New Jersey Department of Environmental Protection (DEP) assumed jurisdiction over the federal government's program administering freshwater wetlands. These appellants claim that the regulation terminating transition area exemptions is inconsistent with that portion of the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 to -30 (Act), which immunized from transition area requirements those projects that received preliminary subdivision or site plan approval prior to July 1, 1989, when the transition area requirements took effect. See In re Adoption of N.J.A.C. 7:7A-1.4, 118 N.J. 552, 573 A.2d 143 (1990), rev'g, 240 N.J. Super. 224, 573 A.2d 162 (App.Div. 1989), on Judge Skillman's dissent. While the regulation has been in effect in some form for several years, the exemptions were effective until March 2, 1994, when the federal government granted the State's application to assume jurisdiction over most of the freshwater wetlands in New Jersey.
*111 We conclude that the regulation conflicts with N.J.S.A. 13:9B-4. Although that statute is less than a model of clarity, we read it as intending to exempt projects which have been approved by local planning or zoning boards prior to the effective date of the Act, unless federal regulations conditioned New Jersey's assumption of the federal program upon voiding those exemptions. In the official approval of New Jersey's application, the federal Environmental Protection Agency (EPA) made it crystal clear that the State had to void exemptions for construction in wetlands in order to assume the federal program; the EPA was equally clear that it had no interest in the State's transition area requirements, since the federal program does not regulate buffer areas. We reverse because the regulation conflicts with the statute.

II
Understanding the issue presented requires an overview of the Act and its pertinent regulations. Prior to the Act, wetlands were regulated by various State agencies and by the EPA and Army Corps of Engineers (Corps) under section 404 of the Clean Water Act of 1977, 33 U.S.C. § 1344. See United States v. Riverside Bayview Homes, 474 U.S. 121, 123, 106 S.Ct. 455, 457, 88 L.Ed.2d 419, 424 (1985); A.R. Criscuolo & Associates v. D.E.P., 249 N.J. Super. 290, 295, 592 A.2d 313 (App.Div. 1991). The Act, adopted on July 1, 1987, and effective on July 1, 1988, provides a comprehensive scheme for the regulation and protection of New Jersey's freshwater wetlands. M. Alfieri Co., Inc. v. State of N.J., Dept. of Environmental Protection and Energy, 269 N.J. Super. 545, 548, 552, 636 A.2d 87 (App.Div.), certif. granted, 136 N.J. 30, 641 A.2d 1041 (1994). The Legislature recognized the importance of wetlands for purifying water, preventing floods, retarding soil erosion and providing a habitat for wildlife, but also recognized the need to protect the rights of property owners in balance with environmental interests. N.J.S.A. 13:9B-2; Alfieri, supra, 269 N.J. Super. at 552, 636 A.2d 87.
*112 Both the federal act and our Act regulate activities in wetlands but there are some important differences. The EPA and our own Legislature employ virtually identical definitions of freshwater wetlands, namely an area that is inundated or saturated by surface water or ground water at a frequency and duration sufficient to support vegetation adapted to life in saturated soil conditions. Compare 33 C.F.R. § 323.2, discussed in United States v. Riverside Bayview Homes, supra, 474 U.S. at 124, 106 S.Ct. at 458, 88 L.Ed.2d at 424, with the Act's definition of freshwater wetland, at N.J.S.A. 13:9B-3. The relevant differences are: First, the federal statute authorizes federal regulation of wetlands which are adjacent to or part of the "waters of the United States" or wetlands the degradation of which might affect interstate commerce. See generally, United States v. Riverside Bayview Homes, supra; Hoffman Homes, Inc. v. Administrator, U.S.E.P.A., 999 F.2d 256 (7th Cir.1993). No similar restriction appears in the Act, and thus DEP has the authority to regulate more wetlands.
Second, New Jersey's Act regulates more activities. The federal program requires a permit for the "discharge of dredged or fill material into the navigable waters" of the United States. 33 U.S.C. § 1344(a). Thus, while a developer needs a permit to fill in a wetland, no federal permit is required to take material out of a wetland, Salt Pond Associates v. U.S. Army Corps of Engineers, 815 F. Supp. 766, 778-79 (D.Del. 1993), or to drain a wetland. Save Our Community v. U.S.E.P.A., 971 F.2d 1155, 1167 (5th Cir.1992). Our Act is much more comprehensive, requiring a permit to fill, drain, remove any soil, disturb the soil in any way, drive pilings, place obstructions, or destroy plant life which would alter the character of the wetland. N.J.S.A. 13:9B-3 (definition of "regulated activity").
Finally, as the December 22, 1993 approval document makes clear, the EPA and the Corps lack authority to regulate land adjacent to wetlands, such as a buffer area between the wetland and the adjoining upland. Our Act mandates buffers around wetlands, called transition areas, to protect wildlife and minimize *113 the impact of development. N.J.S.A. 13:9B-3, 7 & 16. The extent of the buffer depends on the wetland value. Wetlands where the water feeds into trout streams or which provide habitats for endangered species are exceptional; wetlands which are surrounded by a development or merely drainage ditches are ordinary. Everything else is intermediate. N.J.S.A. 13:9B-7. The Act requires transition areas of between 75 feet and 150 feet for wetlands of exceptional resource value; between twenty-five feet and fifty feet for wetlands of intermediate resource value, and no transition area for ordinary value wetlands. N.J.S.A. 13:9B-16b. Current DEP regulations impose the maximum buffers allowed by the Act. N.J.A.C. 7:7A-6.1(d) and (e).
The Clean Water Act authorizes states to assume the federal program. 33 U.S.C. § 1344(g). One of the principal purposes of our Act was to "provide the State with the statutory authority necessary to assume implementation" of the Federal 404 program. Matter of Freshwater Wetlands Rules, 238 N.J. Super. 516, 519, 570 A.2d 435 (App.Div. 1989). See N.J.S.A. 13:9B-2 (to achieve the goals of the Act "it is important that the State expeditiously assume the freshwater wetlands permit jurisdiction currently exercised" by the Corps). Thus, our Act directs DEP and the attorney general to "take all appropriate action to secure assumption of the permit jurisdiction exercised" by the Corps pursuant to the federal act. N.J.S.A. 13:9B-27a.
In order to assume jurisdiction, "the state program must be as stringent as the federal program and must comply with all the requirements of the federal regulations. 33 U.S.C.A. § 1344(g), (h); 40 C.F.R. § 232-33." Matter of Freshwater Wetlands Rules, supra, 238 N.J. Super. at 520, 570 A.2d 435. While the State program is stricter in many respects, it is less stringent to the extent that it exempts from the permit requirement projects which had received preliminary site plan or subdivision approval prior to July 1, 1988. N.J.S.A. 13:9B-4d. See Alfieri, supra, 269 N.J. Super. at 552, 636 A.2d 87; Morich v. N.J.D.E.P., 269 N.J. Super. 240, 244, 635 A.2d 509 (App.Div.), certif. denied, 133 N.J. 428, 627 *114 A.2d 1135 (1992); Matter of Freshwater Wetlands Rules, supra, 238 N.J. Super. at 528-29, 570 A.2d 435. Our Act also exempts projects which had submitted complete preliminary site plan or subdivision applications prior to June 8, 1987 and projects which had applications approved by the Corps prior to the effective date of the Act. N.J.S.A. 13:9B-4d(2) & (3). However, the federal government approval document does not recognize an exemption for projects which have received preliminary site plan or subdivision approval. Thus, our Act eliminates the statutory exemptions if EPA "regulations providing for the delegation to the state of the federal wetlands program conducted pursuant to the Federal Act require a permit for any of these activities, in which case the department shall require a permit for those activities so identified by that agency." N.J.S.A. 13:9B-4.
Finally, the Act's exemption section deals specifically with transition areas, stating that (1) upon renewal of a permit previously granted by the Corps, DEP shall not require a transition area, and (2) projects not subject to the jurisdiction of the Corps "and for which preliminary site or subdivision applications have been approved prior to the effective date of this Act shall not require transition areas." N.J.S.A. 13:9B-4d.
DEP first proposed comprehensive rules on December 21, 1987. 19 N.J.R. 2330 (Dec. 21, 1987). Proposed rule N.J.A.C. 7:7A-2.7 generally covered activities exempt from a permit requirement. 19 N.J.R. 2337 (Dec. 21, 1987). The proposed rule largely tracked the language of N.J.S.A. 13:9B-4, except that it provided that "projects not initiated within five years of enactment of the Act shall apply for a freshwater wetlands permit or open water fill permit." Proposed Rule N.J.A.C. 7:7A-2.7(a)(4)(i). The rule as proposed said nothing about terminating all exemptions when the State assumed the Federal 404 Program. Understandably, although DEP received 475 comments from approximately ninety-four commenters on the proposed rules, 20 N.J.R. 1235 (June 6, 1988), no one remarked on termination of exemptions upon assumption of the federal program (although seventeen commenters *115 protested the proposed five-year termination rule). 20 N.J.R. 1245 (June 6, 1988).
However, between proposal and adoption DEP modified the regulations by inserting an earlier version of the challenged regulation, N.J.A.C. 7:7A-2.7(i), which stated:
If the USEPA's regulations providing for the delegation to the State of the Federal wetlands program conducted pursuant to section 404 of the Federal Act require a permit for any of the activities exempted by this section, the Department shall require a permit for those activities so identified by the USEPA. The exemptions in (d) and (g) above shall be void as of the date of assumption by the Department of the Federal 404 program.
[20 N.J.R. 1269 (June 6, 1988).]
Among the exemptions in subsection (d) which would be void upon State assumption are projects which had obtained preliminary subdivision or site plan approval. Subsection (g) is not relevant here, since it refers to activities authorized by a Corps nationwide permit. Subsection (i) did not void the transition area exemption in subsection (f), which stated:
Projects not subject to the jurisdiction of the United States Army Corps of Engineers and for which preliminary site plan or subdivision applications have been approved prior to July 1, 1989 shall not require transition areas.
[N.J.A.C. 7:7A-2.7(f) at 20 N.J.R. 1269 (June 6, 1988).]
The New Jersey Builders Association challenged the rules as adopted on May 16, 1988 and as published on June 6, 1988. One of the twelve issues raised on the appeal by that organization was "WHETHER THE REGULATIONS IMPROPERLY PROVIDE THAT STATUTORY WAIVERS SHALL BE VOID IF A PERMIT IS REQUIRED WHEN THE STATE ASSUMES THE FEDERAL WETLANDS PROGRAM." 238 N.J. Super. at 525, 570 A.2d 435. We deemed this particular issue, along with ten others, except the termination-after-five-years provision, as clearly without merit, citing R. 2:11-3(e)(1)(D). Id. at 525, 530, 570 A.2d 435.
After argument in Matter of Freshwater Wetlands Rules, supra, but before the decision in that case, DEP adopted comprehensive regulations addressing transition areas. 21 N.J.R. 1858 (July 3, *116 1989). Although the bulk of the regulations had no bearing on the issue here, N.J.A.C. 7:7A-6.2(c) stated:
Projects or activities which are exempt from the requirement of a freshwater wetlands permit pursuant to N.J.A.C. 7:7A-2.7(a), (b), (d), (f) and (g) shall also be exempt from transition area requirements. These transition area exemptions are subject to the same limitations as the corresponding freshwater wetlands permit exemptions. These limitations can be found at N.J.A.C. 7:7A-2.7.
[21 N.J.R. 1875 (July 3, 1989).]
Several commenters urged that all projects which had received preliminary site plan, subdivision, Corps approval or wetlands approval prior to July 1, 1989, should be exempt from the transition area requirements. 21 N.J.R. 1863. DEP responded that N.J.S.A. 13:9B-4d was clear that "projects not subject to the jurisdiction of the U.S. Army Corps of Engineers and for which preliminary site or subdivision applications have been approved prior to the effective date of this Act shall not require transition areas." Ibid. But DEP maintained that it did not attempt to create additional transition area exemptions not sanctioned in the legislation. Ibid.
Since 1989, DEP has twice comprehensively revised the controlling regulations. 24 N.J.R. 975, 1082 (March 16, 1992); 25 N.J.R. 1755, 1762 (April 18, 1993). The changes pertinent on this appeal were effective March 16, 1992. DEP amended subsection (f) by omitting reference to projects not subject to the jurisdiction of the Corps, so that that subsection now reads:
Projects for which preliminary site plan or subdivision applications have been approved prior to July 1, 1989 shall not require transition areas.
[N.J.A.C. 7:7A-2.7(f).]
And subsection (i) was amended to terminate the (f) exemption upon assumption, as follows:
(i) If the USEPA's regulations providing for the delegation to the State of the Federal wetlands program conducted pursuant to section 404 of the Federal Act require a permit for any of the activities exempted by this section, the Department shall require a permit for those activities so identified by the USEPA upon assumption of the Federal program. The exemptions in (d)1 and 2 and (f) above shall be void as of the date of assumption by the Department of the Federal 404 program unless all requisite permits or concurrences with Federal permits were received from the United States Army Corps of Engineers prior to July 1, 1988 and remain valid, in which case the exemption will still be valid. Upon expiration of a *117 permit issued pursuant to the Federal Act any application for renewal shall be made to the appropriate regulatory agency. The Department shall not require the establishment of a transition area as a condition of any renewal of a permit issued pursuant to the Federal Act prior to July 1, 1988.

[N.J.A.C. 7:7A-2.7(i) (emphasis supplied).]
In response to both rule revisions, commenters urged that no federal authority required DEP to terminate exemptions for either permits or transition areas upon assumption of the 404 Program, and that DEP had deviated from the language of the statute by terminating exemptions already granted by the Legislature. 24 N.J.R. 1005-06 (March 16, 1992); 25 N.J.R. 1755, 1759-60 (April 19, 1993).
DEP defended this change as a "clarification," stating:
The Department notes that it has revised N.J.A.C. 7:7A-2.7(i) upon adoption, to clarify that all exemptions from permit and transition area requirements based on municipal approvals will be voided as of the date the Department assumes jurisdiction over the Federal 404 Program. In the proposal, N.J.A.C. 7:7A-2.7(i) had referred only to exemptions under 2.7(d)1 and 2; a reference to 2.7(f) was inadvertently omitted. This clarification is consistent with the Department's position upheld in Matter of Freshwater Wetlands Rules, supra, and with the Department's explanation of N.J.A.C. 7:7A-2.7 in public hearings on the proposal.
[24 N.J.R. 1006 (410) (March 16, 1992).]
The 1993 changes provided that DEP would not require a wetlands permit upon assumption for projects in advanced stages of completion. 25 N.J.R. 1762 (April 19, 1993). In the 1993 amendments, DEP explained that it had to terminate exemptions for projects built in wetlands, explaining:
Since there is no provision in the Federal program for exempting projects which received preliminary site plan or subdivision approvals before July 1, 1988, and since the Federal assumption rules require the Department's exemption rules to be at least as stringent as the Federal rules, the Department cannot allow these exemptions to be effective after assumption.
[25 N.J.R. 1756(5) (April 19, 1993).]
On July 9, 1993 EPA published notice that DEP had applied for approval to assume the federal program. 58 Fed.Reg. 36958 (July 9, 1993). EPA approved the application on December 22, 1993, effective upon published notice in the Federal Register, which occurred on March 2, 1994 (59 Fed.Reg. 9933). On that day DEP sent out a form letter notifying those previously exempt that *118 assumption of the federal program voided all exemptions from permits for activities in wetlands and that exemptions from transition area requirements applicable to intermediate resource value wetlands would expire on December 31, 1994.
Terminating transition area exemptions allegedly will force the individual builders on this appeal, all of whom claim to have received preliminary subdivision or site plan approval prior to July 1, 1989, to either substantially alter or to abandon their projects. Four of the builders, MCG, Matera, FLM and Philco, allegedly have proposed no activities in wetlands themselves but intend to build in transition areas only. At least two of the builders, MCG and Philco, have approvals of projects which include affordable housing.

III
Appellants contend that N.J.S.A. 13:9B-4 prohibits DEP from voiding transition area exemptions upon assumption of the federal program. They insist that permit and transition area exemptions for previously approved projects can be voided only if federal assumption regulations require they be voided. Appellants acknowledge that exemptions for activities in wetlands must now end, but because the federal government does not regulate transition areas, DEP can assume the federal program without voiding transition area exemptions and under the terms of the statute DEP must allow these exemptions to remain in effect.
DEP acknowledges that the State could assume the Federal 404 program without voiding transition area exemptions but it interprets the statute to "require a permit" for otherwise exempt activities when the State assumes the federal program. DEP claims this interpretation is necessary to avoid implementing two programs for wetlands regulation after assumption: one for formerly exempt projects and one for all other projects.
This appeal requires us to interpret N.J.S.A. 13:9B-4 which states in pertinent part:

*119 The following are exempt from the requirement of a freshwater wetlands permit and transition area requirements unless the United States Environmental Protection Agency's regulations providing for the delegation to the state of the federal wetlands program conducted pursuant to the Federal Act require a permit for any of these activities, in which case the department shall require a permit for those activities so identified by that agency:

a. Normal farming, silviculture, and ranching activities such a plowing, seeding, cultivating, minor drainage, harvesting for the production of food and fiber, or upland soil and water conservation practices; construction or maintenance of farm or stock ponds or irrigation ditches, or the maintenance of drainage ditches; construction or maintenance of farm roads or forest roads constructed and maintained in accordance with best management practices to assure that flow and circulation patterns and chemical and biological characteristics of freshwater wetlands are not impaired and that any adverse effect on the aquatic environment will be minimized;
b. Normal harvesting of forest products in accordance with a forest management plan approved by the State Forester;
c. Areas regulated as a coastal wetland pursuant to P.L. 1970, c. 272 (C. 13:9A-1 et seq.);
d. Projects for which (1) preliminary site plan or subdivision applications have received preliminary approvals from the local authorities pursuant to the "Municipal Land Use Law," P.L. 1975, c. 291 (C. 40:55D-1 et seq.) prior to the effective date of this act, (2) preliminary site plan or subdivision applications have been submitted prior to June 8, 1987, or (3) permit applications have been approved by the U.S. Army Corps of Engineers prior to the effective date of this act, which projects would otherwise be subject to State regulation on or after the effective date of this act, shall be governed only by the Federal Act, and shall not be subject to any additional or inconsistent substantive requirements of this act; provided, however, that upon the expiration of a permit issued pursuant to the Federal Act any application for a renewal thereof shall be made to the appropriate regulatory agency. The department shall not require the establishment of a transition area as a condition of any renewal of a permit issued pursuant to the Federal Act prior to the effective date of this act. Projects not subject to the jurisdiction of the United States Army Corps of Engineers and for which preliminary site or subdivision applications have been approved prior to the effective date of this act shall not require transition areas.
[Emphasis supplied.]
Our function is to implement the intent of the Legislature. State v. Sutton, 132 N.J. 471, 479, 625 A.2d 1132 (1993). We first consider the plain language, Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128, 527 A.2d 1368 (1987); if it is clear, the statute must be interpreted according to its terms. Sheeran v. Nationwide Mutual Ins. Co., Inc., 80 N.J. 548, 556, 404 A.2d 625 (1979). To resolve any ambiguity, we consider the purpose of *120 a statute, A.R. Criscuolo, supra, 249 N.J. Super. at 298-99, 592 A.2d 313, by examining the Act in its entirety, Kimmelman, supra, 108 N.J. at 129, 527 A.2d 1368; related legislation, Matter of Freshwater Wetlands Rules, supra, 238 N.J. Super. at 530, 570 A.2d 435; legislative history, In re Adoption of N.J.A.C. 7:7A-1.4, supra, 118 N.J. at 555, 573 A.2d 143; and the common sense of the situation, Morich, supra, 269 N.J. Super. at 244, 635 A.2d 509.
Construction of a statute is a judicial, not an executive, function; we are not bound by an agency's interpretation on a question of law. Service Armament Co. v. Hyland, 70 N.J. 550, 561, 362 A.2d 13 (1976); Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973); In Re Stemark Associates, 247 N.J. Super. 13, 18, 588 A.2d 830 (App.Div. 1991). But the interpretation of the agency charged with enforcing the statute ordinarily is entitled to substantial deference. Alfieri, supra, 269 N.J. Super. at 553, 636 A.2d 87; Criscuolo, supra, 249 N.J. Super. at 299, 592 A.2d 313; Stemark, supra, 247 N.J. Super. at 18, 588 A.2d 830; Matter of Freshwater Wetlands Rules, supra, 238 N.J. Super. at 527, 570 A.2d 435.
Exemptions from the Act should be narrowly construed. Alfieri, supra, 269 N.J. Super. at 554, 636 A.2d 87; Stemark, supra, 247 N.J. Super. at 18-19, 588 A.2d 830. Despite the normal narrow construction doctrine, courts have not hesitated to uphold exemptions if required either by the plain language of the statute or a reasonable interpretation. In re Adoption of N.J.A.C. 7:7A-1.4, supra, 118 N.J. at 555, 573 A.2d 143 (intent overrides alleged "plain meaning"); Morich, supra, 269 N.J. Super. at 244-45, 635 A.2d 509 (court gives reasonable and logical interpretation to find exemption not expressly contained in statute); A.R. Criscuolo, supra, 249 N.J. Super. at 299-300, 592 A.2d 313 (DEP misinterpretation of regulation); Matter of Freshwater Wetlands Rules, supra, 238 N.J. Super. at 530, 570 A.2d 435 (DEP five-year limitation on exemptions contravenes plain language of Act).
*121 N.J.S.A. 13:9B-4 is replete with ambiguities. In his dissenting opinion in Adoption of N.J.A.C. 7:7A-1.4, supra, Judge Skillman noted that the lack of clarity may be explained by intense negotiations and redrafts that preceded adoption of this highly controversial act. 240 N.J. Super. at 236-38, 573 A.2d 162, rev'd on dissenting opinion, 118 N.J. 552, 573 A.2d 143 (1990). For example, N.J.S.A. 13:9B-4 exempts both activities and projects. Yet, exemptions are voided if EPA assumption regulations "require a permit for any of these activities in which the department shall require a permit for those activities so identified by that agency." N.J.S.A. 13:9B-4 (emphasis added). In some sections, the Act fails to distinguish between "projects" and "activities," which can cause confusion. A.R. Criscuolo, supra, 249 N.J. Super. at 298-99, 592 A.2d 313. The Act is also ambiguous because it provides an exemption for both a freshwater wetlands permit and a transition area requirement, unless the federal act requires a permit for "these activities" in which case DEP shall require a "permit" for those activities. However, this section fails to acknowledge that there is no such thing as a permit for an activity in a transition area. Rather, the Act requires a permit for an activity in wetlands, but a waiver for an activity in a transition area.
Our approach to understanding the statute is to take the sections that are clear and to apply the concepts expressed in those sections to the remainder of the statute. There are two which are unambiguous and which DEP has recognized as exempting certain projects from transition area requirements. They are in the last two sentences of N.J.S.A. 13:9B-4d. They state:
The department shall not require the establishment of a transition area as a condition of any renewal of a permit issued pursuant to the Federal Act prior to the effective date of this act;
Projects not subject to the jurisdiction of the United States Army Corps of Engineers and for which preliminary site or subdivision applications have been approved prior to the effective date of this act shall not require transition areas.
DEP acknowledges that it may not require transition areas as a condition of renewing an individual permit issued pursuant to the *122 federal act prior to the effective date of the Act. Indeed, N.J.A.C. 7:7A-2.7(i) expressly so states. See 24 N.J.R. 1006 (March 16, 1992) (DEP "may not require transition areas as a condition of renewal of any Federal permit issued prior to the effective date of the State Act"); 25 N.J.R. 1756 (April 19, 1993) (DEP "will not void exemptions based upon Individual Army Corps permits"). And, with respect to the other clear exemption, DEP acknowledges that it could be interpreted to apply to projects that are located completely outside of wetlands, since the federal act regulates wetlands only. In earlier rulemaking proceedings, DEP seemed to concede the point, stating that the Act is "clear in Section 4d that projects not subject to the jurisdiction of the U.S. Army Corps of Engineers and for which preliminary site or subdivision applications have been approved prior to the effective date of this Act shall not require transition areas." 21 N.J.R. 1863 (July 3, 1989).
Clearly, some projects are exempt from transition area requirements after the State assumes the federal program. We cannot conceive of any purpose which would be furthered by discriminating between these different classes of projects, so long as they received some form of approval, either a federal permit or municipal subdivision or site plan approval, prior to the effective date of the Act.
We conclude that N.J.S.A. 13:9B-4 voids statutory exemptions only if federal assumption regulations require that they be voided. The Act reflects a delicate compromise between environmentalists and developers. Appeal of Adoption of N.J.A.C. 7:7A-1.4, supra, 240 N.J. Super. at 237, 573 A.2d 162 (Skillman, J., dissenting). The political compromise is reflected in that portion of the Act which declares that "in order to advance the public interest in a just manner the rights of persons who own or possess real property affected by this act must be fairly recognized and balanced with environmental interests." N.J.S.A. 13:9B-2. The statute seeks to achieve the two goals of (1) enabling the State to assume jurisdiction over the Federal 404 Program, N.J.S.A. *123 13:9B-27, and (2) sparing developers who earlier had gone through the time, trouble and expense of obtaining subdivision or site plan approval from now complying with the Act's permit and transition area requirements. N.J.S.A. 13:9B-4. The Legislature provided a mechanism for reconciling the conflict between those two goals, should one arise: State exemptions for developers would have to yield to the extent that such exemptions would preclude the State from assuming jurisdiction over the Federal 404 Program because if the exemptions remained the State program would not be as stringent as the federal program. But if the federal government would have allowed the State to assume jurisdiction notwithstanding the exemptions, they should remain in place. By eliminating all exemptions, irrespective of federal requirements, DEP's regulation disturbs the balance the Legislature sought to achieve.
DEP offers several arguments. We find none of them convincing. The agency emphasizes that portion of the introductory paragraph of the statute which states that DEP "shall require a permit" for an otherwise exempt activity if federal assumption regulations require a permit for the activity. DEP notes that the portions of the Act exempting the Hackensack Meadowlands and the Pinelands are more specific because they state that activities in those areas shall not require a wetlands permit or be subject to transition area requirements. N.J.S.A. 13:9B-6.
There are several problems with this approach. First, reliance on the "shall require a permit" language does not help DEP since nothing in the Act authorizes DEP to require any permit in a transition area. The Act is structured to distinguish between permits for activities that take place in wetlands and waivers for activities that take place in transition areas. One needs a permit to engage in a regulated activity in a wetland. N.J.S.A. 13:9B-9a. The Act carefully defines what constitutes a regulated activity in a wetland itself. N.J.S.A. 13:9B-3. But a developer who seeks to engage in an activity in a transition area must get a waiver, not a permit. N.J.S.A. 13:9B-17 & 18. Thus, a person "proposing to engage in a regulated activity in a freshwater wetland or in an *124 activity which requires a transition area waiver may, prior to applying for a freshwater wetlands permit or transition area waiver, request from the department a letter of interpretation to establish that the site of the proposed activity is located in a freshwater wetland or transition area." N.J.S.A. 13:9B-8a (emphasis supplied).
Second, the exemptions are void if EPA delegation regulations "require a permit" for certain activities. Assuming that a project can be equated to an activity, EPA delegation regulations do not require a permit for a project in a transition area, since the federal program does not regulate transition areas.
Third, cross-reference to the statute exempting the Hackensack Meadowlands and the Pinelands is not helpful in understanding N.J.S.A. 13:9B-4. The Act exempts activities in areas under the jurisdiction of the Hackensack Meadowlands Development Commission because that area is expressly excluded from assumption, apparently because the wetlands in the Meadowlands are located within 1000 feet of "all water bodies which are subject to the ebb and flow of the tide." Other waterways falling within the excluded category are the Delaware River, Greenwood Lake and all waterways served by an existing or proposed navigation project. Section 404 of the Clean Water Act does not permit the federal government to cede jurisdiction to the states over "those waters which are presently used, or are susceptible to use in their natural condition or by reasonable improvement as a means to transport interstate or foreign commerce shoreward to their ordinary high water mark, including all waters which are subject to the ebb and flow of the tide shoreward to their mean high water mark ... including wetlands adjacent thereto." 33 U.S.C. § 1344(g). And waters in the Pinelands are regulated by the Pinelands Commission pursuant to the Pinelands Protection Act, N.J.S.A. 13:18A-1 to -29, a major purpose of which is to protect the "especially vulnerable" surface and ground waters in the Pinelands. See N.J.S.A. 13:18A-2.
DEP also claims that the Legislature never intended it to "implement two programs for wetlands regulation after assumption, *125 one for formerly exempt projects and one for all other projects." But DEP is not administering two programs  the Legislature's exemption from transition area requirements for qualifying projects is an integral part of the State program for regulating freshwater wetlands. Moreover, under DEP's own regulations, as interpreted by DEP, some projects continue as exempt, specifically those which obtained a federal permit prior to the effective date of the Act.
DEP is in essence urging that transition area exemptions become void upon assumption of the Federal 404 program, irrespective of the requirements of federal delegation regulations. If the Legislature had so intended, it could easily have established the State's assumption of the federal program as the termination date for any transition area exemptions. Instead, the Legislature terminated transition area exemptions only if required by the federal government. DEP's interpretation would effectively nullify the Legislature's conditions for voiding transition area exemptions.

IV
In defending the elimination of transition area exemptions upon assumption of the federal program, DEP also contends that this issue has already been resolved in its favor in Matter of Freshwater Wetlands Rules, supra. 24 N.J.R. 1006 (March 16, 1992); 25 N.J.R. 1756 (April 19, 1993). Appellants say this is not possible since, at the time this court decided that appeal, DEP regulations preserved transition area exemptions for projects not subject to the jurisdiction of the Corps and for which preliminary site plan or subdivision approval was granted prior to July 1, 1989. N.J.A.C. 7:7A-2.7(f) (at 20 N.J.R. 1269 (June 6, 1988)).
We agree with appellants. At that time, DEP never indicated that it intended to terminate all exemptions, irrespective of federal requirements, particularly transition area exemptions, when it assumed the federal program. If DEP had taken that position, we would have discussed the merits, just as we addressed, and *126 rejected, DEP's claim that the statutory exemption should end in five years. Matter of Freshwater Wetlands, supra, 238 N.J. Super. at 527-30, 570 A.2d 435.

V
In responding to critics of the proposal to terminate transition area exemptions upon assumption of the federal program, DEP relies in part on the Permit Extension Act, L. 1992, c. 82, N.J.S.A. 40:55D-130 to -136 (PEA). Appellants claim DEP has misinterpreted the PEA, which declines to extend exemptions for projects to be built in transition areas adjacent to exceptional resource value wetlands. The PEA does not shorten the duration of any permit or approval. DEP responds that appellants' interpretation of PEA would render meaningless those provisions not extending transition area exemptions in exceptional resource value wetlands.
The Legislature declared that a state of "economic emergency" existed in New Jersey, beginning January 1, 1989, and expected to last through December 31, 1994, which particularly affected the banking, real estate and construction sectors of New Jersey's economy. N.J.S.A. 40:55D-131a. The prevailing lack of credit and shortage of buyers or tenants for new construction had severely depressed the construction industry and related trades. N.J.S.A. 40:55D-131d and e. The economic crunch had stopped many projects in their tracks, during which time thousands of government approvals were expiring. N.J.S.A. 40:55D-131f. Those approvals were expensive, difficult and time-consuming to obtain and often impossible to renew, once expired or lapsed. N.J.S.A. 40:55D-131c. The purpose of the PEA was to "prevent the wholesale abandonment of approvals due to the unfavorable economic conditions, by tolling the expiration of these approvals until such time as the economy improves." N.J.S.A. 40:55D-131j.
The Legislature addressed the problem by automatically extending any government approval which was scheduled to expire between January 1, 1989 and December 31, 1994. N.J.S.A. 40:55D-133a. PEA defines "approval" broadly, including permits issued under the Wetlands Act, preliminary and final subdivision *127 or site plan approval, or any other government authorization "of any development application or any permit related thereto, whether that authorization is in the form of a permit, approval, license, certification, waiver, letter of interpretation, agreement or any other executive administrative decision which allows a development to proceed." N.J.S.A. 40:55D-132 (emphasis supplied).
PEA carves out specific exceptions from this blanket extension of all approvals, among them permits for activities in the Pinelands or permits issued by the federal government. N.J.S.A. 40:55D-133. The exceptions to the general rule of extension are set forth in N.J.S.A. 40:55D-134a, which states:
a. (1) Except as otherwise provided in this section, nothing in this act shall have the effect of extending any project exemption granted pursuant to subsection d. of section 4 of the "Freshwater Wetlands Protection Act," P.L. 1987, c. 156 (C. 13:9B-4).
(2) This act shall automatically extend any project exemption granted pursuant to subsection d. of section 4 of P.L. 1987, c. 156 ... to maintain a transition area adjacent to freshwater wetlands, if the freshwater wetlands which would be affected by the project are not freshwater wetlands of exceptional resource value.
Preliminary subdivision or site plan approval grants developers several important vested rights, including protection against changes in use requirements, design standards, lot size, off-tract improvements, and the right to proceed toward final approval. N.J.S.A. 40:55D-49a & b. Those rights are vested for three years, and the planning board may grant two one-year extensions, and more for certain large projects. N.J.S.A. 40:55D-49c & d. Final approval gives the developer immunity from all changes in the ordinance for an additional two years, and possibly three one-year extensions or more for large projects. N.J.S.A. 40:55D-52. These approvals do not "lapse" as that term is ordinarily understood, although there has existed a widespread understanding that such approvals do expire. William M. Cox, N.J. Zoning and Land Use Administration § 15-5.2 at 255 (1994). In 1993 the Supreme Court clarified that the approvals are valid indefinitely, but expire in the sense that after the period of statutory protection they are not immune from newly-adopted land use requirements. Palatine I v. Montville Tp. Planning Bd., 133 N.J. 546, 554, 628 A.2d 321 (1993). The effect of PEA is to preserve vested rights acquired *128 by virtue of subdivision or site plan approval until December 31, 1994 (since extended to December 31, 1996 by L. 1994, c. 145, effective Dec. 1, 1994), which might otherwise be lost prior to that time. Appellants urge the valid point that nothing in the language of the Act shortens the life of any permit. N.J.S.A. 40:55D-134 extends the life of a preliminary subdivision or site plan approval if the project is in a transition area adjacent to wetlands of intermediate resource value, but declines to extend the life of an approval for a project which will be built in wetlands themselves or in a transition area adjacent to an exceptional resource value wetland.
DEP is incorrect in assuming that appellants' interpretation of the Act would render meaningless the freshwater wetlands sections of PEA. Most of the individual developers participating in this appeal alleged that they have received extended vesting periods from local boards. MCG's site plan approval, granted June 22, 1989, does not expire until June 30, 1995. Matera's June 29, 1989, subdivision approval was extended by the planning board until August 3, 1994. Philco's June 26, 1989, preliminary site plan approval remains valid through December 4, 1995. Since their approvals did not expire during the period of economic emergency, these developers are not affected by PEA. But many developers are not as fortunate. N.J.S.A. 40:55D-134 clearly has an impact on developers whose approvals would expire during the period of economic emergency. Without PEA, projects in areas adjacent to intermediate resource value wetlands could be subject to transition area requirements.
The legislative history confirms appellants' analysis of the text of the bill, which in general was intended to extend approvals that otherwise might lapse. The original bill, S. 417, would have extended permits and approvals for projects to be built in wetlands and transition areas. Governor Florio wanted approvals for projects to be built in wetlands or transition areas to lapse, and ultimately compromised by allowing extended permits for projects to be built in transition areas adjacent to intermediate resource value wetlands. Governor's Reconsideration Statements to S. 417 *129 (June 1, 1992); Governor's Reconsideration Statement to S. 944 (July 20, 1992). Nothing in the legislative history suggests the Legislature intended to shorten the time period for certain approvals, nor does it suggest that anyone even thought about what might happen when the State assumed the Federal 404 program.
We find N.J.A.C. 7:7A-2.7(i) invalid to the extent that it attempts to terminate exemptions for projects to be built in transition areas upon assumption of the Federal 404 program. We stress that this ruling relates only to the facial validity of the regulation. This ruling should not be construed as approving or disapproving any particular project of any developer or builder, whether a party to this action or not. The right to proceed on any particular project must be determined on the merits of each particular exemption in a transition area in the individual case under the local approval.
Reversed.
NOTES
[1] By Executive Order of May 4, 1994 the Department's official title reverted to Department of Environmental Protection (DEP).