915 A.2d 34

SAMUEL L. DOYAL, APPELLANT, v. NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL
PROTECTION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 14, 2006—Decided January 24, 2007.

Before Judges SKILLMAN, HOLSTON, JR. and GRALL.

*Richard M. Hluchan,* argued the cause for appellant (*Ballard Spahr Andrews & Ingersoll,* attorneys; *Mr. Hluchan,* of counsel; *Robert S. Baranowski, Jr.,* on the brief).

*Jane F. Engel,* Deputy Attorney General, argued the cause for respondent (*Stuart Rabner,* Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Ms. Engel,* on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The Freshwater Wetlands Protection Act (FWPA), *N.J.S.A.* 13:9B–1 to –30, authorizes issuance of a general permit for an activity in a freshwater wetland "which is not a surface water tributary system discharging into an inland lake or pond, or a river or stream[.]" *N.J.S.A.* 13:9B–23(b). The issue presented by this appeal is whether the word "inland" in *N.J.S.A.* 13:9B–23(b) modifies not only "lake or pond" but also "a river or stream," thus exempting wetlands that discharge into tidal rivers or streams from the prohibition against issuance of general permits for activities on wetlands that are part of a surface water tributary system. We conclude that the word "inland" in *N.J.S.A.* 13:9B–23(b) only modifies "lake or pond" and, therefore, a general permit may not be issued for an activity on a wetland that discharges into a tidal river or stream.

Appellant is the owner of a small undeveloped lot in West Cape May. Appellant's lot consists almost entirely of freshwater wetlands. These wetlands drain into a stormwater system, which discharges into Cape Island Creek, a tidal stream that discharges into the Atlantic Ocean.

In 2003, appellant applied to the Department of Environmental Protection (DEP) pursuant to *N.J.S.A.* 13:9B–23(b) for a general permit, referred to as a GP6, see *N.J.A.C.* 7:7A–5.6, to fill the wetlands on his property for construction of a single family house. If an applicant does not qualify for issuance of a general permit

under *N.J.S.A.* 13:9B–23(b), he must apply for an individual permit pursuant to *N.J.S.A.* 13:9B–9 and *N.J.S.A.* 13:9B–13. *See In re Authorization for Freshwater Wetlands Gen. Permits,* 372 *N.J.Super.* 578, 582 n. 2, 860 *A.2d* 450 (App.Div.2004); *N.J.A.C.* 7:7A–1.4; *N.J.A.C.* 7:7A–4.2(e); *N.J.A.C.* 7:7A–7.1 to 7.5.

Appellant's application was denied on the grounds that the wetlands on his property are part of a surface water tributary system that discharges into a river or stream and that the wetlands are of exceptional resource value due to the presence in a nearby forest of the southern gray treefrog, a state endangered species. Appellant filed an appeal from this denial, which was referred to the Office of Administrative Law as a contested case.

At the hearing before an Administrative Law Judge (ALJ), the parties stipulated that the wetlands on appellant's lot discharge into Cape Island Creek, which is a tidal stream. However, appellant argued that *N.J.S.A.* 13:9B–23(b) prohibits issuance of a general permit only for an activity on wetlands that discharge into a non-tidal waterway. In view of the parties' stipulation that the wetlands on appellant's property discharge into a tidal stream, the evidence presented at the hearing related solely to the issue of whether the wetlands are of exceptional resource value because they are part of the habitat of the endangered southern gray treefrog.[1]

The ALJ found that the wetlands on appellant's property are not part of the habitat of the southern gray treefrog. Notwithstanding this finding, the ALJ upheld the denial of the general permit. The ALJ concluded, without substantial discussion, that the prohibition against issuance of a general permit for an activity on a wetland that discharges into a surface water tributary system only applies to wetlands that discharge into non-tidal waterways. He then found, apparently forgetting the parties' stipulation that

---

[1] Because we do not need to reach the exceptional resource value issue to decide this appeal, there is no reason to discuss the evidence presented at the hearing.

the wetlands on appellant's property discharge into a tidal waterway, that appellant had failed to establish this fact. Both parties filed exceptions to the ALJ's recommended decision.

The Commissioner of the DEP issued a final decision that upheld the denial of appellant's application for a general permit but rejected the ALJ's proposed findings and conclusions. The Commissioner concluded that *N.J.S.A.* 13:9B–23(b) prohibits issuance of a general permit for a regulated activity on any wetlands that discharge into a surface water tributary system, regardless of whether that system is non-tidal or tidal. In reaching this conclusion, the Commissioner relied on the plain language of the statute and its legislative history. The Commissioner also upheld the denial of appellant's application on the alternative grounds that the wetlands are of exceptional resource value because they adjoin a breeding and overwintering habitat for the endangered southern gray treefrog and that appellant's property is within the 150–foot transition area associated with the habitat of this species.

We affirm the denial of appellant's application for a general permit on the ground that *N.J.S.A.* 13:9B–23(b) prohibits issuance of a general permit for a regulated activity on any wetlands that discharge into a river or stream, regardless of whether it is non-tidal or tidal. This conclusion makes it unnecessary to consider the Commissioner's alternative grounds for denial of appellant's application.

*N.J.S.A.* 13:9B–23(b) provides in pertinent part:

> The department shall issue a general permit for an activity in a freshwater wetland *which is not a surface water tributary system discharging into an inland lake or pond, or a river or stream,* and which would not result in the loss or substantial modification of more than one acre of freshwater wetland, provided that this activity will not take place in a freshwater wetland of exceptional resource value.... The provisions of this subsection shall not apply to any wetlands designated as priority wetlands by the United States Environmental Protection Agency.
>
> (Emphasis added.)

These requirements are also set forth in *N.J.A.C.* 7:7A–5.6.

Under this subsection, a general permit for filling or any other regulated activity on a freshwater wetland may be issued only if

four requirements are satisfied: (1) the wetland is one acre or less; (2) the United States Environmental Protection Agency has not designated the wetland as a "priority wetland[ ]"; (3) the wetland is not part of "a surface water tributary system discharging into an inland lake or pond, or a river or stream"; and (4) the wetland is not "of exceptional resource value." These requirements are conjunctive; a general permit may be granted under *N.J.S.A.* 13:9B–23(b) only if the applicant satisfies all four requirements.

Appellant argues that he satisfied the requirement that his wetlands are not part of "a surface water tributary system discharging into an inland lake or pond, or a river or stream," because the wetlands on his property do not discharge into an "inland" waterway. The question posed by this argument is whether the word "inland" in *N.J.S.A.* 13:9B–23(b) modifies only "lake or pond" or also modifies "a river or stream."

The starting point in statutory construction, and if the meaning is sufficiently clear, all that may be required, "is to look at the plain language of the statute." *In re Freshwater Wetlands Prot. Act Rules,* 180 *N.J.* 478, 491, 852 *A.*2d 1083 (2004). "If the statute is clear and unambiguous on its face and admits of only one interpretation, [courts] need delve no deeper than the act's literal terms to divine the Legislature's intent." *Ibid.* (quoting *State v. S.R.,* 175 *N.J.* 23, 31, 811 *A.*2d 439 (2002)).

We conclude that it is clear on the face of *N.J.S.A.* 13:9B–23(b) that the word "inland" modifies only "lake or pond." If the drafters of this subsection had intended "inland" also to modify "a river or stream," there would have been no reason to separate "an inland lake or pond" from "a river or stream" by inserting a comma and the word "or" between them. Instead, the drafters would have used the single phrase: "an inland lake, pond, river or stream." Therefore, as a matter of syntactical analysis, "inland" does not modify "a river or stream," and *N.J.S.A.* 13:9B–23(b) must be read to prohibit issuance of a general permit for a

regulated activity on wetlands that discharge into any river or stream, regardless of whether it is non-tidal or tidal.

Moreover, even if it were necessary to refer to legislative history to determine the intended application of *N.J.S.A.* 13:9B–23(b), this history confirms our interpretation of the plain language. The Legislature enacted the FWPA in 1987 "to provide a comprehensive scheme for the regulation and protection of New Jersey's freshwater wetlands." *In re Freshwater Wetlands Prot. Act Rules, supra,* 180 *N.J.* at 482, 852 *A.*2d 1083. One of the FWPA's stated purposes was for the State to "assume the freshwater wetlands permit jurisdiction ... exercised by the United States Army Corps of Engineers pursuant to [section 404 of the federal Clean Water Act (CWA), 33 *U.S.C.A.* § 1344] and implementing regulations." *N.J.S.A.* 13:9B–2. "The CWA authorized states to assume the regulatory responsibilities of the federal program, ... provided the state program was 'as stringent as the federal program and ... compl[ied] with all the requirements of the federal regulations[.]' " *In re Freshwater Wetlands Prot. Act Rules, supra,* 180 *N.J.* at 483, 852 *A.*2d 1083 (quoting *In re Freshwater Wetlands Prot. Act Rules,* 238 *N.J.Super.* 516, 520, 570 *A.*2d 435 (App.Div.1989)). In enacting the FWPA, the New Jersey Legislature chose to adopt a state program that does not simply replicate the federal regulatory program but instead affords even "greater protection for wetlands" than the CWA. *Ibid.*

The CWA conferred jurisdiction upon the Army Corps of Engineers to issue permits for the discharge of dredged or fill material into the "navigable waters" of the United States. 33 *U.S.C.A.* § 1344(a), (e). Pursuant to this authority, the Army Corps adopted regulations that authorized issuance of nationwide general permits, commonly referred to as NWPs, for certain activities on wetlands. 33 *C.F.R.* 330.5(a) (July 1, 1987).[2] Generally, these

[2] These regulations were revised in 1991 when the Army Corps issued ten new NWPs and moved the text of the NWPs into an appendix to the regulations. 59

regulations only authorized nationwide permits for "activities which [had] relatively insignificant impact on wetlands and involve[d] discharges of dredged or fill material which [would] cause minimal adverse effects on the environment when performed separately and minimal cumulative effects overall." *A.R. Criscuolo & Assocs., Inc. v. N.J. Dep't of Envtl. Prot.*, 249 *N.J.Super.* 290, 296, 592 *A.*2d 313 (App.Div.1991); *see also Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 *F.*3d 1272, 1276 (D.C.Cir.2005).

The FWPA authorizes the DEP to issue general permits under circumstances analogous to those under which the CWA authorized the Army Corps to issue nationwide permits. *See N.J.S.A.* 13:9B–23(b),(c). When the FWPA was enacted, the applicable federal regulation, 33 *C.F.R.* § 330.5(a)(26) (sometimes referred to as NWP 26, see *Nat'l Ass'n of Home Builders, supra,* 417 *F.*3d at 1276), authorized the Army Corps to issue nationwide general permits for regulated activities on certain wetlands and other waterways that were not part of a surface tributary system, but limited this authorization to "non-tidal" waterways. This regulation provided in pertinent part:

> (26) Discharges of dredged or fill material into the waters listed in paragraphs (a)(26)(i) and (ii) of this section except those which cause the loss or substantial adverse modification of 10 acres or more of such waters of the United States, including wetlands. . . .
>
> (i) *Non-tidal rivers, streams, and their lakes and impoundments,* including adjacent wetlands, that are located above the headwaters.
>
> (ii) *Other non-tidal waters of the United States,* including adjacent wetlands, that are not part of a surface tributary system to interstate waters or navigable waters of the United States (i.e., isolated waters).
>
> [33 *C.F.R.* § 330.5(a)(26) (emphasis added) (quoted in *A.R. Criscuolo & Assocs., supra,* 249 *N.J.Super.* at 296, 592 *A.*2d 313).][3]

*Fed. Reg.* 59110. In 1997, these regulations were removed from the *C.F.R.* entirely and are now published only in the federal register. 62 *Fed. Reg.* 6877.

[3] In addition to the revisions to 33 CFR 330.5(a) discussed in footnote 2, the applicable federal regulations were amended in 1996 and 1998 to phase-out NWP 26 and replace it with activity-specific general permits to better represent regional differences in wetlands. 61 *Fed. Reg.* 65874; 65875. The new activity-

Thus, the specific Army Corps regulation upon which *N.J.S.A.* 13:9B–23(b) was based did not authorize the issuance of a nation-wide general permit for filling or other regulated activity in a wetland that discharged into a tidal waterway. Rather, such an activity had to be authorized by an individual permit issued pursuant to 33 *C.F.R.* 323.3(a). Consequently, if the FWPA authorized the issuance of a general permit for a regulated activity on a wetland discharging into a tidal waterway, this would violate the CWA's mandate that any state program must be "as stringent as the federal program and compl[y] with all the requirements of the federal regulations," *In re Freshwater Wetlands Prot. Act Rules, supra,* 180 *N.J.* at 483, 852 *A.*2d 1083 (quoting *In re Freshwater Wetlands Prot. Act Rules, supra,* 238 *N.J.Super.* at 520, 570 *A.*2d 435), contrary to the expressed intent of the FWPA to assume the Army Corps' regulatory functions. Therefore, the legislative history of the FWPA reinforces our conclusion, derived from the plain language of *N.J.S.A.* 13:9B–23(b), that the DEP does not have authority to issue a general permit for a regulated activity on a wetland that discharges into a river or stream, regardless of whether it is non-tidal or tidal.

Appellant contends that the DEP has previously construed *N.J.S.A.* 13:9B–23(b)'s prohibition against the issuance of a gener-al permit for a regulated activity on a wetland that discharges into a river or stream not to apply if the waterway is tidal. However, the three decisions appellant relies upon in support of this conten-tion do not establish such a prior administrative construction. The first was made by an ALJ and apparently not reviewed by the Commissioner; the second did not require the Commissioner to determine whether a general permit may be issued for a regulated activity on a wetland that discharges into a tidal waterway because the wetland was "isolated"; and the Commissioner declined to

---

specific permits were "most[ly] ... restricted to discharges of dredged or fill material into non-tidal waters of the United States." 63 *Fed. Reg.* 36040. For a more detailed discussion of the history of NWP 26, see *Nat'l Ass'n of Home Builders, supra,* 417 *F.*3d at 1276–77.

address the issue in the third. Moreover, even if appellant could show that the DEP previously construed *N.J.S.A.* 13:9B–23(b) to authorize issuance of a general permit for a regulated activity on a wetland that discharges into a tidal waterway, it still would be our obligation to construe the statute to effectuate the plainly expressed legislative intent to prohibit issuance of a general permit for a regulated activity on wetlands that discharge into a stream or river, regardless of whether it is non-tidal or tidal, rather than to perpetuate an administrative construction of *N.J.S.A.* 13:9B–23(b) that the DEP now recognizes was erroneous.

Affirmed.